**Richard TUCKER, Petitioner-Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.**

**No. 83–8466.**

United States Court of Appeals, Eleventh Circuit.

May 31, 1985.

Opinion on Denial of Rehearing July 23, 1985.

Joseph M. Nursey, Millard Farmer, Kenneth Rose, Atlanta, Ga., for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., William B. Hill, Jr., Atlanta, Ga., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.*

R. LANIER ANDERSON, III, Circuit Judge:

## INTRODUCTION

This case was taken en banc principally to consider two of the several constitutional claims asserted by appellant Richard Tucker. In Section One of this opinion, we discuss the claim that the instructions on intent at Tucker's trial impermissibly shifted the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). We conclude that there was a *Sandstrom* error, but that the error was harmless beyond a reasonable doubt. In Section Two of this opinion, we discuss Tucker's claim that the prosecutor's argument during the sentencing phase of his capital trial rendered the sentencing phase fundamentally unfair. We reject Tucker's argument in this regard,

and conclude that his sentencing phase was not fundamentally unfair.

In addition to the two issues which this opinion will discuss, Tucker asserts four other constitutional claims: (1) that the prosecutor's comment on Tucker's silence violated his rights under the Fifth, Eighth and Fourteenth Amendments; (2) that trial counsel's failure to investigate and prepare for trial denied Tucker his right to effective assistance of counsel; (3) that the trial court's failure to instruct the jury on confessions as required by state law, when considered in conjunction with the admission of contradictory, disputed and uncounseled confessions, violated Tucker's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments; and (4) that Tucker was denied his right to an evidentiary hearing in the district court below. The panel affirmed the district court's denial of relief on issues (1) and (3) above, and also on Tucker's claim that he was denied effective assistance of counsel at the guilt/innocence phase of his trial. *Tucker v. Francis*, 723 F.2d 1504 (11th Cir.), *vacated for reh'g en banc*, 728 F.2d 1358 (11th Cir.1984). With respect to these issues, we reinstate the panel opinion. See Parts III and VI of the panel opinion and that portion of Part IV concerning ineffective assistance of counsel at the guilt/innocence phase. 723 F.2d at 1508–16, 1517–18.

The panel did not reach the issues of whether an evidentiary hearing should have been held in the district court or whether Tucker's trial counsel was ineffective at sentencing, *see* 723 F.2d at 1516, 1518 (Parts IV and VII), because the panel granted relief on another sentencing phase

---

* All of the Judges of the Court join in the disposition of the four issues referred to in the Introduction to Judge Anderson's opinion for the Court, reinstating the panel opinion or remanding to the panel with respect to those issues.

All of the Judges of the Court concur in Part I of Section One of Judge Anderson's opinion concluding that there is a *Sandstrom* violation. Judge Hill has also written separately on this issue.

The following Judges join in Part II of Section One of Judge Anderson's opinion concluding that the *Sandstrom* error is harmless: Godbold, Chief Judge, and Judges Roney, Tjoflat, Hill,

Fay, Vance, Kravitch, Henderson, Hatchett, Anderson and Clark. Judge Johnson has filed an opinion dissenting on this issue.

The following Judges join in Section Two of Judge Anderson's opinion concluding that the prosecutorial argument did not render the sentencing phase fundamentally unfair: Godbold, Chief Judge, and Judges Roney, Tjoflat, Hill, Fay, Vance, Henderson, Hatchett, and Anderson. Judge Clark filed an opinion, joined by Judge Kravitch, concurring in this result only. Judge Johnson filed an opinion dissenting on this issue.

issue and remanded for a new sentencing hearing. Since our resolution of this case does not require that Tucker receive another sentencing hearing, the two issues not reached by the panel are no longer moot. Thus, we remand the case to the panel for resolution of those two issues.

Tucker was convicted of kidnapping with bodily injury and murder by a Butts County, Georgia, jury. The evidence presented at trial tended to show that Tucker's victim, a 55-year old woman, was kidnapped and forced to drive to a secluded area. The victim was then robbed and clubbed to death with an iron pipe. Her body was then stripped of all clothing and the clothing was burned. The partially decomposed nude body was not discovered until five days later. Additional facts relevant to the two issues discussed in this opinion will be set out as appropriate.

Tucker was sentenced to death both on the murder charge and on the kidnapping with bodily injury charge. His convictions and sentences were affirmed by the Georgia Supreme Court on direct appeal. *Tucker v. State,* 245 Ga. 68, 263 S.E.2d 109 (1980), and the United States Supreme Court denied Tucker's petition for writ of certiorari. *Tucker v. Georgia,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980). In May 1981, Tucker filed a habeas corpus petition in the Superior Court of Butts County, Georgia, which was denied. A second habeas corpus petition in the same court was denied in January 1982. The Supreme Court again denied certiorari. *Tucker v. Zant,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

The instant habeas corpus petition was filed in the United States District Court for the Middle District of Georgia in November 1982. The district court denied relief. On appeal, a panel of this court granted relief only on the issue involving the prosecutor's argument during the sentencing phase.

*Tucker v. Francis,* 723 F.2d 1504 (11th Cir.1984). A petition for rehearing en banc was granted, thus vacating the panel opinion. 728 F.2d 1358 (11th Cir.1984).

SECTION ONE: *SANDSTROM ISSUE*

I. WAS THERE AN IMPERMISSIBLY BURDEN–SHIFTING INSTRUCTION UNDER *SANDSTROM* ? [1]

■ Tucker was charged in a two-count indictment, the first count of which was malice murder and the second count of which was kidnapping with bodily injury. Intent is an essential element of both charges. Tucker argues that the trial judge's instruction regarding intent was impermissibly burden-shifting under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The relevant part of the jury charge reads as follows:

Members of the Jury, I give you certain definitions taken from the laws of the State of Georgia. A crime is a violation of a Statute of this State in which there shall be a union of joint operation of act or omission to act and intention or criminal negligence. [sic]. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. *A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.* A person will not be presumed to act with criminal intention, but the trier of fact, that is you the Jury, may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

(Emphasis added).[2] The above emphasized instruction, which amounts to a mandatory rebuttable presumption on the essential element of intent, is identical to the ones

1. Although defense counsel made no objection to the jury charge at trial, there is no procedural default because the state supreme court reached the *Sandstrom* issue on the merits, *Tucker v. State,* 245 Ga. 68, 263 S.E.2d 109, 111–12, *cert. denied,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980), and the state has not

claimed procedural default in this court or the district court; nor has it argued that defense counsel's failure to object should otherwise affect the *Sandstrom* analysis.

2. The entire jury charge is reproduced as Appendix A to this opinion.

found impermissible in the recent Supreme Court case of *Francis v. Franklin,* —— U.S. ——, 105 S.Ct. 1965, —— L.Ed.2d —— (1985), and in our recent en banc case of *Davis v. Kemp,* 752 F.2d 1515, 1517–19 (11th Cir.1985) (en banc). The state argues, however, that the general instruction regarding the state's burden of proof with respect to every element of the crimes charged and the instruction stating that "[a] person will not be presumed to act with criminal intention ...", was curative of any potentially burden-shifting instruction. *See Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (jury charge must be read as a whole). This contention must also fail in light of *Francis v. Franklin* which considered almost identical allegedly curative instructions and nevertheless held the instruction as to intent to be impermissibly burden-shifting. *See Franklin,* —— U.S. at ——, 105 S.Ct. at 1974–1976; *accord, Davis,* 752 F.2d at 1517–19.

After a careful review of the entire jury charge, and employing the analysis set forth by the Supreme Court in *Francis v. Franklin,* we find that a reasonable jury could well have concluded that Tucker bore the burden of proof on the necessary element of intent. The relevant portions of the jury instructions in this case cannot be distinguished from the jury charge in *Francis v. Franklin,* which we find to be controlling. We thus conclude that the instruction violates *Sandstrom.*

## II. WAS THE *SANDSTROM* ERROR HARMLESS?

The Supreme Court has left open the question whether a *Sandstrom* error can ever be harmless. *Francis v. Franklin,* —— U.S. at ——, 105 S.Ct. at 1977. However, our en banc court in *Davis* recently reaffirmed for this circuit that a *Sandstrom* error, like most other errors of constitutional magnitude, can be held harmless beyond a reasonable doubt. *Da-*

*vis v. Kemp,* 752 F.2d at 1520–21; *see also McCleskey v. Kemp,* 753 F.2d 877, 902–03 (11th Cir.1985) (en banc). *Davis* identified two situations where harmless error analysis is appropriate: (1) where the evidence of the defendant's guilt was overwhelming; and (2) where the instruction concerned an element of the crime not in issue at trial.[3] *Davis,* 752 F.2d at 1521 (citing *Lamb v. Jernigan,* 683 F.2d 1332, 1342 (11th Cir. 1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983)).

Turning first to the second portion of the *Davis* harmless error analysis, Tucker argues that his intent was at issue by virtue of the fact that he claimed non-participation in the killing. Although Tucker did not put on any evidence at trial, his sole defense was non-participation in the killing. It is clear that the crux of Tucker's defense was that Willie Lee Mahone, not he, was the perpetrator of the killing. Tucker presented his non-participation defense, not by establishing direct evidence of Mahone's guilt, but by attempting to undermine the credibility and expertise of the state's witnesses through rigorous cross-examination. Tucker's defense attorneys, in their closing arguments, attempted to convince the jury that a reasonable doubt had been raised as to Tucker's participation in the killing.

The *Davis* case emphasized that the nature of the defense at trial is an important factor in the harmless error analysis. *Davis,* 752 F.2d at 1521. In *Davis,* as here, the thrust of the defense was the defendant's non-involvement, and the defense made no effort to rebut the evidence that the killing which had taken place was intentional. While intent remained at issue in the sense that it was not conceded and the burden of proof remained on the state, the *Davis* court expressly considered as important the fact that the defense did not contest the issue of intent, thus leaving unrebutted the overwhelming evidence that the killing was intentional.[4] Accordingly, al-

---

**3.** *See McCleskey v. Kemp,* 753 F.2d 877, 903–04 (11th Cir.1985) (en banc).

**4.** *See Connecticut v. Johnson,* 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (Blackmun, J., writing for a plurality of four justices)

("In addition, a Sandstrom error may be harmless if a defendant conceded the issue of intent.... In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently

though Tucker's defense posture does not by itself conclude the harmless error analysis, it is relevant to our consideration of the first prong under *Davis, i.e.,* whether the evidence of guilt was overwhelming.

We turn, then, to the other inquiry under *Davis* —whether the evidence of guilt was overwhelming. Tucker argues, again based on his non-participation defense, that the evidence of guilt was not overwhelming. However, the *Davis* case makes clear that this prong should usually focus on whether evidence of *intent,* rather than the more inclusive issue of *guilt,*[5] is overwhelming. *Davis,* 752 F.2d at 1521 & n. 10; *see Connecticut v. Johnson,* 460 U.S. 73, 86, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (Blackmun, J., writing for a plurality of four justices); *id.* at 90, 96, 97, 99, 101, 103 S.Ct. at 979, 982, 983, 984, 985 (Powell, J., dissenting); *accord, Franklin v. Francis,* 720 F.2d 1206, 1212 (11th Cir.1983), *aff'd,* — U.S. —, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985) (affirming this "court's conclusion that the evidence of intent was far from overwhelming ..."). The reason for this focus is apparent. In the usual case, as in *Davis* and the instant case, the erroneous intent instruction could not possibly affect the jury's determination of who the killer was. Rather, the intent instruction could have tainted only the finding of intent.

We turn, then, to the evidence of intent.[6] The record evidence is undisputed that the perpetrator kidnapped his victim while she was in her car, drove her to a secluded spot, stole her watch, handbag and wedding ring, and then killed her. As to the actual killing, the uncontradicted evidence indicates that the perpetrator struck the victim over the head with a blunt instrument. Dr. L.A. Erbele, a pathologist who examined the victim's body after the killing, testified as follows:

> [T]here was a depressed fracture of the right frontal area.... That appeared to be the cause of death. It was a very forceful blow to have fractured the skull so extensively across—particularly across the petrous portion of the temporal bond, which is named petrous because it is stony it's so hard, so it had to be a very forceful blow by a blunt object, and I estimated the striking surface of the blunt object to be about an inch or an inch and a half in diameter....

Police investigators found a metal pole at the scene of the crime which they believed was the weapon used by Tucker. The pipe was sent to a lab and found to have remains of human blood on it. The blood could not be typed. Dr. Erbele testified that the metal pole was consistent with the type of object he believed caused the victim's death.

reducing the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless.... We leave it to the lower courts to determine whether by raising a particular defense or by his other actions, a defendant himself has taken the issue of intent away from the jury").

If a *Sandstrom* error can be harmless when the issue of intent is conceded, it is only a short step to hold that the harmless error doctrine should similarly be applicable where a defendant does not formally concede intent, but focuses his defense entirely upon alibi or a similar defense, in the face of overwhelming evidence that whoever committed the offense did so intentionally. When such overwhelming evidence of intent is left wholly unrebutted, it is not unreasonable to think that an appellate court can, depending upon all the facts and circumstances of a case, be satisfied beyond a reasonable doubt that the error was harmless. The appellate court can do so just as readily as in a case where the issue of intent was conceded.

5. In any event, in this case the evidence that Tucker was the guilty killer was also overwhelming. He confessed in great detail to all the crimes. In addition, his fingerprints were found on the victim's credit card. He was seen with the victim's car, and the evidence indicated that he sold the victim's watch which he had stolen. Tucker's attempt to cast blame for the killing on Mahone was simply not bolstered by any probative evidence.

6. In this case, Tucker was charged *only* with malice murder, and there were no instructions to the jury on felony murder or aiding and abetting. Thus, we are concerned only with the evidence of intent to kill and malice; we need not be concerned with intent to commit an underlying felony or intent to aid and abet. *Cf. Drake v. Kemp,* 762 F.2d 1449, 1455–1457 (11th Cir.1985) (en banc).

We hold that there was overwhelming evidence of intent. Dr. Erbele's testimony to the effect that the victim died of one crushing blow to the skull by a blunt instrument went uncontradicted at trial. As indicated above, Dr. Erbele's testimony was corroborated by the fact that a metal pole with remains of blood was found near the body. The type of crushing blow described by Dr. Erbele does not occur by chance. There is no reasonable hypothesis other than that the perpetrator intended to crush his victim. Thus, this case is distinguishable from *Franklin v. Francis*, 720 F.2d 1206, 1208–12 (11th Cir.1983) (*Sandstrom* error held not harmless), *aff'd,* —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), where the defendant claimed that his gun went off accidentally when a door was slammed in his face. Guns go off accidentally, but a violent blow with a blunt instrument could rarely, if ever, be dealt by accident. *Compare also Brooks v. Kemp*, 762 F.2d 1383, 1390–1394 (11th Cir.1985) (*Sandstrom* error held not harmless).

In light of the foregoing, we can confidently say "beyond a reasonable doubt that the [*Sandstrom*] error complained of did not contribute to the [murder] verdict obtained."[7] *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (constitutional standard for harmless error). Thus, the *Sandstrom* error was harmless.

### SECTION TWO:
### PROSECUTORIAL ARGUMENT

Tucker challenges the prosecutor's closing argument during the sentencing phase of his capital trial. Part I of this section will detail the facts relevant to Tucker's prosecutorial argument claim. Part II will discuss the relevant standard for reviewing claims of prosecutorial argument as elaborated by this court in *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985) (en banc). Part

III will analyze the propriety of the various arguments made by the prosecutor. Finally, Part IV will consider the improper arguments made to determine whether they rendered Tucker's sentencing trial "fundamentally unfair." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

### I. FACTS

Tucker was arrested soon after the body was discovered. He first claimed that a friend, Willie Lee Mahone, had killed the victim while he observed. In this first version he did admit to undressing the victim after death in order to burn her clothes and destroy fingerprints. In a later statement to police, he confessed to abducting and killing the victim by himself, but denied any sexual assault,[8] stating that he had undressed the victim after killing her in order to burn her clothes and destroy fingerprints. He also showed police officers the locations where he had disposed of various personal effects stolen from the victim.

Tucker was tried for murder and kidnapping with bodily harm. The confession was introduced along with eyewitness testimony that he had been seen driving the victim's car shortly after the murder. Mahone testified that Tucker bragged about killing a woman and stated that he would kill again. An FBI witness testified that Tucker's fingerprint was found on some credit cards taken from the victim the night of her murder. Finally, an expert witness testified that a hair found on clothes seized in Tucker's apartment was a "brown caucasian pubic hair." Tucker is black; the victim was white.

Following the findings of guilt on the murder and kidnapping charges, the sentencing phase of Tucker's capital trial began. Tucker, who had remained silent at

---

**7.** This must necessarily be true with respect to the kidnapping with bodily injury conviction. There is no evidence in the record to dispute the fact of the kidnapping itself. That being the case, it makes little sense to conceive of the kidnapping as unintentional or impulsive. Finally, the overwhelming evidence that the kid-

napping was perpetrated with bodily injury is adequately presented in the text in our discussion of the malice murder charge.

**8.** Due to the body's decomposition, it could not be determined if the victim had been sexually assaulted.

trial, took the stand and claimed that he made the confession that was introduced at trial simply to stop the police from pressuring him. He claimed that Mahone had actually killed the victim and that he had only undressed her so as to remove fingerprint evidence. He was cross-examined forcefully about his denial of the confession and also asked about his previous record, which included the murder of his aunt 15 years before and a burglary charge stemming from an incident of attempted rape.

The prosecution called W.O. Allen to testify at sentencing. Allen, a former police detective, testified about his investigation of Tucker's earlier crimes. He recalled that Tucker had confessed in 1964 to killing his aunt with a pair of scissors. Tucker also confessed to the incident of attempted rape.

Finally, the state called Frank Sagnibene to the stand. Sagnibene was a parole officer charged with supervising Tucker, who had been on parole from his first murder conviction for only six months at the time this crime occurred. Sagnibene testified that Tucker, in a discussion shortly after his arrest, admitted to the murder, indicated that he was the sole perpetrator, and stated that he made the victim undress

before killing her. This rebuttal testimony was inconsistent with Tucker's claim that Mahone was the principal assailant and his claim that he undressed her after the killing.

Following this testimony, closing arguments were delivered to the jury by each attorney.[9] The jury was correctly instructed as to its sentencing task, and, after a short deliberation, it returned death sentences for each crime.[10]

## II. STANDARD OF REVIEW

◼ In *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985) (en banc), this court set forth the standard for reviewing prosecutorial argument at the sentencing phase of a capital trial.[11] Improper arguments will not command habeas corpus relief unless they render the sentencing proceeding "fundamentally unfair." 762 F.2d at 1399–1400 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974).[12] To make that determination, a reviewing court should ask whether there is a reasonable probability that, in the absence of the offending remarks, the sentencing outcome would have been different. 762 F.2d at 1401–1402 (citing *Strickland v. Washington*, —— U.S. ——,

9. The argument for the state, delivered by Donald Thompson, covered 13 pages in the trial transcript and dealt with many valid sentencing considerations. We will examine the various improprieties alleged by Tucker in Part III of this section of the opinion.

10. Under Georgia law, following conviction of a capital crime, the prosecutor may seek the death penalty. In order to support a death verdict, the jury must find at least one "statutory aggravating circumstance" to exist beyond a reasonable doubt. Ga.Code Ann. § 17–10–30(c) (1982). Once such a circumstance has been found, the jury has complete discretion to impose death or life imprisonment as a punishment. *See Zant v. Stephens*, 250 Ga. 97, 297 S.E.2d 1 (1982). In this case, the jury found three aggravating circumstances to support death for the murder charge—that the offense was committed by a person engaged in another capital felony (kidnapping), that the offense was committed by a person with a prior conviction for a capital felony (*i.e.*, Tucker's earlier murder), and that the murder was committed for the purpose of receiving money or something of monetary value (the victim's car and watch

were taken by Tucker). Each of these factors undeniably were supported by the record. The jury also found one valid aggravating circumstance to support death for the kidnapping charge—that the crime was committed by someone with a previous record of a capital felony.

11. While *Brooks* concerned improper argument at the sentencing phase of a capital trial, its discussion of the standard of review is applicable in habeas review of argument at the guilt phase as well. In determining whether argument rendered a guilt or sentencing phase "fundamentally unfair," the different purposes of the proceedings must be kept in mind. *See, e.g., Brooks v. Kemp*, 762 F.2d at 1402 n. 27. Tucker does not challenge in this case the prosecutor's argument during the guilt phase.

12. This standard of review only governs our consideration of habeas corpus petitions by state prisoners. The federal courts have broader power to correct prosecutorial misconduct in federal prosecutions. *Houston v. Estelle*, 569 F.2d 372, 380–81 (5th Cir.1978); *see also Brooks v. Kemp*, 762 F.2d at 1416 n. 52.

——, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698 (1974)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington,* —— U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 698.

Of course, our constitutional review will only gauge the impact of *improper* arguments. If an argument focuses on a subject appropriately within the jury's concern, it ordinarily will not be improper. As a general matter, the Georgia capital sentencing jury may consider the circumstances of the particular offense, the individual characteristics of the defendant (including the potential for future dangerousness or rehabilitation), and the valid penological justifications for the death penalty (retribution, incapacitation, and general deterrence). *Brooks v. Kemp,* 762 F.2d at 1405–1408. Arguments related to those topics will normally be acceptable. *Id.,* at 1408.

In this case, we must examine the closing argument delivered by the prosecutor and isolate portions which are improper. We then can decide whether the improper argument rendered Tucker's sentencing fundamentally unfair.

### III. PROPRIETY OF PROSECUTOR'S ARGUMENT

Tucker asserts that various portions of the sentencing argument made by prosecutor Donald Thompson were instances of misconduct.[13] We consider his claims as raised.[14]

█ 1. Tucker first complains of a remark in Thompson's opening argument at the sentencing phase. In explaining his request that the jury impose death, the prosecutor stated:

There are not many times that I come before a trial jury and make the request that I will be making of you in this case. In effect, I think this is the seventh time in seven years that I've stood in the same position, so I do not take this lightly.

This statement, invoking the expertise of the prosecutor to suggest the special seriousness of the crime, was improper. *Brooks v. Kemp,* 762 F.2d at 1410; *Hance v. Zant,* 696 F.2d 940, 951 (11th Cir.1983); *see also Conner v. State,* 251 Ga. 113, 303 S.E.2d 266, 276 ("The portion of the prosecutor's argument referring to his prior criminal experience and the frequency with which he had sought the death penalty was not supported by any evidence and, moreover, was irrelevant to any issue in the case. The argument was therefore improper"), *cert. denied,* —— U.S. ——, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). We will consider the effect of this statement in Part IV of this section of the opinion.

2. The most serious problem with Thompson's closing was the following argument about the possibility of sexual assault:

During the course of the main case there was not a great deal of evidence that you could consider about whether or not... [the victim] was sexually assaulted, but additional things have come in since that time and I think that you can consider the fact that she was unclothed and the fact that he says at one point she was on her knees, I think you can consider—I think you consider this history right here: On the 25th day of December, 1964, Christmas Day, Richard Tucker did unlawfully and with force and arms feloniously break and enter into ... [a] dwelling house ... with intent to commit a felony, to-wit: rape. I think you can consider the medium brown pu-

**13.** Tucker's counsel did not object during Thompson's closing argument. While lack of objection can be considered in reviewing the effect of improper argument, *Brooks v. Kemp,* 762 F.2d at 1397 n. 19, we need not consider the precise effect of the failure to object because the arguments here did not rise to the level of a constitutional violation.

**14.** The panel considered as separate issues Tucker's claims that (1) the argument was fun-

damentally unfair, and (2) the argument improperly referred to his silence at trial, in violation of his Fifth Amendment rights. *Tucker v. Francis,* 723 F.2d 1504 (11th Cir.1984). We reinstate the panel's conclusion that mention of Tucker's silence did not violate *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Thus, our review of the prosecutor's closing argument does not reconsider that issue.

bic hair that was found on his clothing, and I think in your own mind you should be settled that this defendant not only killed ... [the victim]—and I hate to say this with the family sitting in the courtroom because I know they don't want to believe this; they don't want to believe the type of punishment that this defendant imposed on their mother or their wife—but I think in your own mind you should be settled now by knowing that this man is a rapist and a murderer, that he forced ... [the victim] to commit acts of oral sodomy on him, and that he committed the offense of rape. That's the reason she was unclothed, not this nonsense about fingerprints on clothing.

Tucker argues that there was no evidence in the record to support claims of rape or oral sodomy.

The prosecutor had not charged Tucker with sexual assault. Because of the body's decomposition, medical analysis could not prove whether or not an assault had taken place. The Georgia Supreme Court stated that the medical testimony "effectively eliminated any issue of sexual assault" from the guilt phase of Tucker's trial. *Tucker v. State*, 245 Ga. 68, 263 S.E.2d 109, 110 (1980). The state conceded as much in argument before this court. We therefore assume, for purposes of argument only, that there was insufficient evidence at the guilt phase to have supported a finding of guilt for either rape or oral sodomy. Such an assumption does not, however, necessarily resolve the issue in Tucker's favor.

Concerning the mention of rape, there was ample evidence to support the inference. The victim was found nude in a secluded location. Medical analysis could neither confirm nor discount assault. A confession introduced at trial contained Tucker's statement that he had made the victim kneel before him, struck and killed her, and then undressed her. Tucker told Mahone that he had killed a woman and that she was lying naked on a platform. Examination of clothes seized from Tuck-

er's abode a few days after the murder uncovered a caucasian pubic hair on or near the pants apparently worn by Tucker the night of the murder. All this information was adduced at the guilt phase of the trial.

At the sentencing phase, more information was placed before the jury on the issue of sexual assault, adding to the arguably insufficient evidence introduced during the trial on guilt. Tucker testified and contradicted his confession, claiming that Mahone had killed the victim. He claimed to know nothing about the pubic hair on his clothes. He claimed that neither he nor Mahone had committed rape or forced the victim to perform any act of sex. He claimed not to know why the victim was kneeling down naked. He claimed that he undressed the woman to destroy evidence of his own fingerprints, but also stated that he had never touched the woman. The jury, of course, was able to judge his credibility as he testified in a manner inconsistent with some aspects of his confession. The state introduced the testimony of Tucker's parole officer that Tucker admitted to making the victim undress before he killed her, thus contradicting Tucker's claim that he undressed her after death in order to destroy fingerprint evidence.

It has long been held that a prosecutor may argue both facts in evidence and reasonable inferences from those facts. *Alvarez v. Estelle*, 531 F.2d 1319, 1323 (5th Cir.1976), *cert. denied*, 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977);[15] *Spain v. State*, 243 Ga. 15, 252 S.E.2d 436, 439 (1979); *see also* ABA Standards for Criminal Justice 3.5–8(a) (1980) ("The prosecutor may argue all reasonable inferences from evidence in the record"). That such inferences are available in a capital sentencing proceeding is demonstrated by the propriety of argument about future dangerousness or rehabilitative prospect. *Jurek v. Texas*, 428 U.S. 262, 274–75, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976); *Brooks v.*

---

**15.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

*Kemp,* 762 F.2d at 1406–1407. The propriety of Thompson's mention of rape and oral sodomy depends, therefore, on whether the activities could reasonably be inferred from the evidence before the jury.

Given the physical evidence (nudity of the victim and pubic hair on Tucker's clothing), the inconsistencies between Tucker's confession and testimony (on the issues of who killed the victim, whether Tucker undressed her before or after death, whether she knelt down naked before being killed, whether concern about fingerprints was the real reason for removing the victim's clothes), and the ability of the sentencing jury to observe Tucker's credibility as he testified, we have no trouble concluding that Thompson could argue rape as a reasonable inference.

The allegation of oral sodomy, on the other hand, was unreasonable. The body's complete nudity and the pubic hair on Tucker's pants were both more consistent with Tucker raping the victim than they were with his forcing her to commit oral sex. Aside from the testimony about the victim kneeling down before Tucker, which we view as too insubstantial to support a reasonable inference of oral sex, Thompson's allegation appears to be a gratuitous and unsupported charge. It was a serious professional impropriety and its effect will be considered in Part IV of this section.

3. Tucker complains about some of the terms Thompson used to describe him to the jury ("less than human"; "not somebody in our society that we can afford to keep"; "he is a danger like a time bomb"). These references, part of an argument about Tucker's lack of mercy and danger to society, were supported by the evidence and not improper.

4. Tucker complains of Thompson's various suggestions that he would kill again if given the chance. In addition to general assertions that Tucker would kill, Thompson argued about the possibility of his killing a guard or prisoner if he was given a life sentence.

These comments were proper because they concerned the valid sentencing factor of Tucker's future dangerousness. *Brooks v. Kemp,* 762 F.2d at 1411. In addition to evidence about his prior murders, the jury heard testimony about Tucker's hatred for prison guards at the state prison and his statement to Mahone that he enjoyed killing and would kill again. Thus, there was ample evidence to support the prosecutorial reference to the possibility of future crimes.

5. Thompson made various references to parole during his closing argument. He first referred to the fact that Tucker had not been rehabilitated during the prison sentence for his first murder and that he had killed again within six months of being paroled. He then argued the following:

Can we afford—can you afford as a jury and as a citizen to take the chance if you impose a life sentence on this Defendant? Can we afford to take the chance that some day 13 years or so from now when a Pardon and Parole Board looks at this Defendant and says, "Well, he hasn't killed anybody in 13 years." At that time he will be somewhere in his 40's, and that Pardon and Parole Board says, "Well, he's doing all right. Let's let him out again." Are you going to feel safe on the streets? Are you? Are you?

It scares me every time I get a letter from the Pardon and Parole Board. "We're considering Richard Tucker for parole." It scared me so badly I wrote a two-page letter. You know what? They let him out anyway. That's why you have an interest in this case. That's why you as a juror, Ms. Brooks, Ms. Jones, you individually and you collectively, have an interest in this case and that is to protect society against Richard Tucker.

Arguments to the jury about the possibility of parole are forbidden in Georgia and will lead to a declaration of mistrial upon objection. Ga.Code Ann. § 17–8–76 (1982). *See also, Tucker v. State,* 245 Ga. 68, 263 S.E.2d 109, 112 (1980). No objection was made by Tucker's counsel.

■ Despite the impropriety under state law of arguments about parole, Thompson's first reference to Tucker's previous parole was not improper. First, the evidence of previous parole was introduced by Tucker himself during his testimony at the sentencing phase. Second, the Georgia prohibition of argument about parole envisions argument about future activities by state officials. Discussing a past parole does not violate the statute.

■ The discussion of future parole was improper, however. Thompson's claim that he wrote a letter to the Parole Board to block Tucker's release was not supported by any evidence. Neither was it relevant. It allowed him to strongly imply that the Board would be derelict in its duties and release Tucker again. This extended beyond a mere argument about future dangerousness into a claim that the jury had to account for errors to be committed by other actors in the criminal justice system. The capital sentencing jury should not be burdened with such speculative assertions. This problem will be further examined in Part IV.

6. Finally, Tucker complains of various comments made by the prosecutor to emphasize the serious responsibility the jury was charged with in choosing punishment. Thompson told the jurors "you are the only people in the entire world that can stop Richard Tucker from killing." He informed them that "the next victim of Richard Tucker will be on your conscience." Finally, he discussed the seriousness of the decision, recognized its difficulty, but told the jury that it must carry out its responsibility.

It is completely appropriate to remind the jury of the importance of its sentencing decision. By contrast, arguments which trivialize that decision may be improper. *Fleming v. State*, 240 Ga. 142, 240 S.E.2d 37 (1977) (prosecutor cannot argue that appellate court will correct any errors made by the jury).

■ While the importance of the decision can and should be stressed, the prosecutor went beyond appropriate limits in this case by portraying the jury as the last line of defense against Tucker. Arguing that any future victim would be on the jury's conscience, and that jurors were the *only* people who could stop Tucker from killing, derogated the role that others would have in seeing to it that Tucker, if given a life sentence, would be effectively incapacitated. As a factual matter, it is flatly wrong to assert that jurors are the only people who can control a defendant's future behavior. Neither the future diligence of an appellate court nor the possibility of future incompetence of corrections and parole personnel should be invoked to alter the jury's perception of its role at capital sentencing.

## IV. WAS THE SENTENCING HEARING FUNDAMENTALLY UNFAIR?

■ Four of the arguments made by Thompson were improper—the unsupported reference to oral sex, the parole discussion, the attempt to place the burden of future danger solely upon the jury, and the discussion of the prosecutor's office policy. Because the existence of aggravating circumstances was overwhelmingly supported by the facts in evidence,[16] we find no danger that these improper arguments affected the jury's threshold finding that at least one statutory aggravating circumstance was shown beyond a reasonable doubt. Given such a finding, Tucker was rendered eligible for the death penalty under Georgia law. We must, however, determine whether there was a reasonable probability that the improper arguments changed the jury's exercise of discretion in choosing between life imprisonment and death. *See Brooks v. Kemp*, 762 F.2d at 1407–1408 (Georgia sentencing jury has two tasks; argument infringing upon either task may warrant relief).

■ The most serious impropriety was Thompson's reference to oral sex. The allegation was not reasonably supported by the evidence and it demonstrated a serious disregard for the gravity of the capital sentencing proceeding. The reasonable

---

**16.** The aggravating circumstances found are discussed in note 10 *supra.*

reference to rape partially mitigated the remark's potentially devastating impact because the issue of sexual assault was already properly placed before the jury. Still, the remark is a disturbing example of a prosecutor's zeal triumphing over his professional responsibility to seek a just result. Capital punishment is an "expression of the *community's* belief that certain crimes are ... so grievous an affront to humanity that the only adequate response may be the penalty of death." *Gregg v. Georgia,* 428 U.S. 153, 184, 96 S.Ct. 2909, 2930, 49 L.Ed.2d 859 (1976) (emphasis added). The prosecutor should not project his own response onto the community's representatives by unreasonable inferences from flimsy evidence.

Thompson's arguments about parole are also troubling in their implication that the Board would be derelict in its duty and release Tucker prematurely. The argument was effectively countered by defense counsel's argument that Tucker would probably never be released again. Although Thompson's argument was improper, we do not believe that it had a serious prejudicial impact. The jury appropriately had before it the fact that Tucker previously had been paroled from a sentence for a capital crime. This properly introduced fact inevitably raised the possibility of future parole, and was more influential than the arguments of either attorney.

We have condemned discussion about the prosecutor's frequency of seeking the death penalty as irrelevant and improperly suggestive of the prosecutor's "expert opinion" about a particular case. *Brooks v. Kemp,* 762 F.2d at 1410. The explicit comment in this case—"In fact, I think this is the seventh time in seven years that I've [sought the death penalty]"—was more limited than that found improper in *Brooks.* Any suggestion that the jury was somehow relieved of its decision by the prosecutor's choice was completely rebutted by the continuous focus, in closing argument of both attorneys and the trial court's instructions, on the gravity of the choice left to the jury. While we cannot say that the jurors gave no credit to Thompson's improper assertion that this case was special, we have no doubt that they completely understood that the discretion to impose punishment was theirs alone.

Finally, Thompson's attempts to place personal responsibility on the jurors was wrong. Thompson's excessive arguments were gratuitous and inflammatory. However, the improper comment was brief, and probably added little to the future dangerousness arguments which were properly considered by the jury.

While these arguments were all improper, particularly the reference to oral sex, we are convinced that Tucker has not shown a reasonable probability that their absence would have led to a different outcome. There was overwhelming evidence of guilt, thus reducing to a minimum the chance that an innocent person will be executed. *Brooks v. Kemp,* 762 F.2d at 1402 n. 27. The circumstances of this murder, the reasonable inference of rape, Tucker's previous conviction of a vicious capital crime and testimony about his desire to kill again, all made the case very strong for the imposition of the death penalty. Although similar arguments might be fundamentally unfair in a less egregious case, they did not render this sentencing fundamentally unfair.

### SECTION III: CONCLUSION

For the reasons stated in Section One, the judgment of the district court in denying habeas corpus relief on the *Sandstrom* issue is AFFIRMED.

For the reasons stated in Section Two, the judgment of the district court denying habeas corpus relief on the prosecutorial argument issue is AFFIRMED.

With respect to the issues indicated in the Introduction to this opinion, we reinstate the panel opinion, AFFIRMING the district court's denial of habeas corpus relief.

With respect to Tucker's claims concerning his rights to an evidentiary hearing in the district court and to effective assistance of counsel at the sentencing phase,

which issues are now ripe for resolution, we REMAND to the panel.

## APPENDIX A

CHARGE OF THE COURT:

Members of the Jury, the Grand Jury of this County has returned an Indictment charging Richard Tucker, the Defendant in this case, with the offenses of murder in count one and of kidnapping with bodily injury in count two of this Indictment. To this Indictment, the Defendant has entered his plea of not guilty; and the Indictment on the one hand and the plea of not guilty on the other hand form the issues which you as jurors have been impanelled to try.

These counts, the two counts, are being tried together, but I charge you that you are to consider each count against this defendant separately and you are to determine the guilt or innocence of the Defendant on each of these counts without being controlled in that determination by your findings as to the guilt or innocence of the Defendant in the other count. In other words, you try each of these counts against the Defendant just as you would try it if the Defendant were on trial on one count only, and you determine the guilt or innocence of the Defendant in each of these counts without being controlled by your determination as to the guilt or innocence of the Defendant in the other count.

Now, I am not going to read the Indictment to you. It has already been read. The Indictment will be out with you and subject to your inspection. You should look at it and read it for the specific charges brought against this Defendant.

As I have stated, the Indictment is in two counts, each count charging a separate and distinct alleged offense. It will be your duty to determine the guilt or innocence of this Defendant upon each of the two counts separately, and you will return a separate verdict as to each of the two counts.

Now, the charge that I am about to give you will apply to each count of this Indictment separately, and you will consider that charge in connection with each count of the Indictment. The fact that the Defendant has been indicted by the Grand Jury raises no presumption or inference whatsoever against him. You will not take the fact that an Indictment has been preferred against this Defendant as having any probative or evidentiary force or value whatsoever. The Indictment is only the process by which the law brings a Defendant to trial, containing as it does the contentions of the State. All of these contentions in this case, however, are denied by the Defendant. The Defendant's plea of not guilty challenges and denies every material allegation in each count of this Indictment, and I charge you that before the State is entitled to a verdict of conviction of the Defendant at your hands upon either count of this Indictment, the burden is upon the State of proving the Defendant's guilt as charged in such count beyond a reasonable doubt. The State, however, is not required to prove the guilt of the Defendant beyond all doubt or to a mathematical certainty. Moral and reasonable certainty is all that can be expected in a legal investigation.

Now, reasonable doubt is just what the term implies. It's a doubt based upon reason. It is not an arbitrary nor capricious doubt. It is not a fancy or conjecture or supposition that the Defendant might be innocent, but it is just such a doubt as a reasonable man or woman would have, would act upon or would decline to act upon in a matter of importance or grave concern to himself or herself. In other words, it is the doubt of a fair-minded, impartial juror honestly seeking for the truth, and it may arise from a consideration of the evidence, from a conflict in the evidence or from a lack of evidence.

If, upon a consideration of all the facts and circumstances of this case your mind is wavering, unsettled, uncertain, not satisfied, then that is the reasonable doubt under the law; and if such a doubt rested upon your mind, it is your duty to give the Defendant the benefit of that doubt and acquit him. If, on the other hand, no such doubt rests upon your mind, it would be equally your duty to return a verdict of guilty.

Now, the Defendant enters upon the trial with a presumption of innocence in his favor, and this presumption remains with him throughout the trial unless and until it is overcome by evidence sufficiently strong to satisfy you of his guilt to a reasonable and moral certainty and beyond a reasonable doubt.

You are the judges of the law in the case, but you take the law as given you in charge by the Court and, applying the law to the facts as you find the facts to be, you return a verdict that speaks the truth of the case, the object of all legal investigations being the discovery of the truth.

You are the sole and exclusive judges of the facts in the case. You pass upon the weight, force and credit to be given to the evidence in the case, and you alone determine the credibility of the witnesses who have testified in the case.

Now, in passing upon the credibility of the witnesses, you are authorized to consider all the facts and circumstances of the case: the witnesses' manner of testifying, their means and opportunity for knowing the matters about which they testified, their interest or want of interest in the case, their intelligence or lack of intelligence, the nature of the matters to which they testified, the probability or improbability of their testimony and, also, their personal credibility insofar as the same may legitimately appear from the trial. You may also consider their bias or prejudice in the case, if any. All of these things are proper matters for your consideration insofar as they legitimately appear from the trial of the case. It is for you to finally determine what credit is to be given to a witness.

Now, the Defendant in this case has elected not to testify. There is no burden on the Defendant to prove or disprove anything in a criminal case, and I charge you that the failure of the Defendant to testify shall not raise any presumption or inference hurtful to him or against him, and you will not consider that in any manner whatsoever.

I charge you as to two types of evidence. There is direct evidence, that is evidence which immediately points to the question in issue; and indirect evidence or circumstantial evidence. Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed.

Now, to warrant a conviction on circumstantial evidence alone, the proved facts must not only be consistent with the hypothesis of guilt, but they must exclude every other reasonable hypothesis, save that of the guilt of the accused. I charge you, however, that whether dependent upon direct or circumstantial evidence, the true test in a criminal case is not whether the conclusion at which the evidence points may be false, but whether or not the evidence is sufficiently strong to satisfy your minds and consciences to a reasonable and moral certainty and beyond a reasonable doubt of the Defendant's guilt. If the evidence is thus strong, it would be your duty to convict. If it is not thus strong, it would be equally your duty to acquit.

Now, Members of the Jury, flight, if any, by one who has done an act alleged to be a crime immediately after the act or similar acts, if proved, from which an inference or a consciousness of guilt may be drawn by the Jury, may be considered by the Jury, but flight is subject to explanation. The weight to be given to it and whether or not the Jury will draw the inference of a consciousness of guilt from it is a question for the Jury. It is for the Jury to determine whether the flight of the Defendant, if any such has been shown, was due to a sense of guilt or was prompted by other causes; and if the alleged flight was prompted by causes other than a consciousness of guilt, no inference hurtful to the Defendant should be drawn from the alleged flight.

Now, Members of the Jury, the Court does not mean or intend by anything heretofore said or hereafter said to express or intimate any opinion to you as to what has or has not been proved in this case or as to what your verdict should or should not be. If the Court has said or done anything or should say or do anything during the

progress of the trial, including this charge, which would lead you to believe that the Court has expressed or intimated any opinion as to what has or has not been proved or as to what your verdict should or should not be, you will disregard such expressions or intimations entirely and completely disabuse your minds of that.

Now, Ladies and Gentlemen, the burden is upon the State to prove to a reasonable and moral certainty and beyond a reasonable doubt every material allegation in each count of this Indictment.

Members of the Jury, I give you certain definitions taken from the laws of the State of Georgia. A crime is a violation of a Statute of this State in which there shall be a union of joint operation of act or omission to act and intention or criminal negligence. The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention, but the trier of fact, that is you the Jury, may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

Now, Members of the Jury, the State contends that the Defendant is guilty of the offense of murder in count one as charged in this Indictment. A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature. Malice—excuse me—which intention is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned or malignant heart.

Now, you will see from what I have just read to you, which is the definition of murder, that malice is an essential ingredient in murder as charged in this count one, and it must exist before the alleged homicide can be murder. Malice, in it's legal sense, is not necessarily ill will or hatred. It is the unlawful, deliberate intention to kill a human being without justification or mitigation or excuse, which intention must exist at the time of the killing. It is not necessary, however, that this unlawful, deliberate intention should exist for any particular length of time before the killing. If it enters the mind of the slayer the moment before he fires the fatal shot or strikes the fatal blow or inflicts the fatal wound, then that is sufficient.

Now, I further charge you, Members of the Jury, that in connection with the charge in count one, that is murder, that it is incumbent on the State to prove beyond a reasonable doubt that Richard Tucker was the actor in this case, that is that he did what is charged and, further, you must find beyond a reasonable doubt that the person killed was Edna Sandefur, that she was a human being, that she was killed by Richard Tucker with malice aforethought as I have defined it to you and that she was killed by being struck with a certain pipe which was a weapon likely to produce death when used as it was used.

Members of the Jury, I charge you that if you believe beyond a reasonable doubt that the Defendant, in this County on or about the date alleged in the Indictment with the weapon or instrumentality named in the Indictment and with malice aforethought, either express or implied, did unlawfully and intentionally strike and kill the deceased, and if you find that the deceased is—you must find that the deceased is Edna Sandefur—as charged in this indictment, and if you believe that the weapon or instrumentality used in the manner used, if one was used, was one likely to produce death, then you would be authorized and it would be your duty to convict the Defendant of the offense of murder, and in that event, the form of your verdict would be: "We, the Jury, find the Defendant guilty."

On the other hand, as to count one, the Defendant contends that he is not guilty of this offense and he further contends that the State has not proved his guilt of this offense beyond a reasonable doubt and to a moral certainty.

If, from a consideration of the evidence or from a lack of evidence, you are not satisfied beyond a reasonable doubt and to a reasonable and moral certainty that the State has established the guilt of the Defendant of the offense charged in the Indictment, then it would be your duty to acquit him on count one, and the form of that verdict would be as to count one: "We, the Jury, find the Defendant not guilty."

In count two the State contends that the Defendant is guilty of the offense of kidnapping with bodily injury, that is to say death. This is the law of Georgia: "A person commits kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will, provided that if the person kidnapped shall have received bodily injury, the person convicted shall be punished as provided by law."

Now, I charge you that if you believe beyond a reasonable doubt that the Defendant, in this County on or about the date alleged in the Indictment, did abduct and steal away Edna Sandefur without lawful authority or warrant and did hold Edna Sandefur against her will and that as a result and as a part of said kidnapping did cause the said Edna Sandefur to receive bodily injury, that is to say that she was killed by the person abducting and stealing her away—if you find that to be the case, then in that event you will be authorized and it would be your duty to convict the Defendant of the offense of kidnapping with bodily injury, and in that event, the form of your verdict would be: "We, the Jury, find the Defendant guilty of kidnapping with bodily injury."

As to count two, the Defendant contends that he is not guilty of the offense charged and further contends that the State has not proved his guilt of the offense as charged in count two to a reasonable and moral certainty and beyond a reasonable doubt. If, from a consideration of the evidence or from a lack of evidence, you are not satisfied beyond a reasonable doubt and to a reasonable and moral certainty that the State has established the guilt of the Defendant of the offense charged in count two, then it would be your duty to acquit him as to count two, and the form of that verdict would be as to count two: "We find the Defendant—We, the Jury, find the Defendant not guilty."

Now, Members of the Jury, you will consider each count in the Indictment separately and you will return a verdict under each count separately in one of the forms which I have given you in charge. Have your foreman write out your verdict as to each count, sign it, date it and return the verdict into court.

Now, your verdict must be unanimous, and as I said, it must be in writing, dated and signed by your foreman or forelady in the case. If you cannot unanimously agree on a verdict, the Court is required to declare a mistrial and try the case again before another jury; however, no juror is required to surrender his or her honest opinion because of an honest different opinion of another juror or jurors or for the purpose of reaching a unanimous verdict.

Every effort consistent with the instructions I have given you and with your consciousness and oaths as jurors should be fairly and honestly made to reach a unanimous verdict in the case. Whatever your verdict is is a matter entirely for you to determine.

Who are the alternate jurors?

(Whereupon alternate jurors raise their hands)

All right, you would remain seated, please, and take the twelve up to the Jury Room.

Members of the Jury, though, do not begin deliberating until I have sent the evidence and the Indictment to you and until I have instructed you to begin deliberations.

APPENDIX A—Continued

(Whereupon the Jury retired from the courtroom.

The alternate jurors were then excused.)

JAMES C. HILL, Circuit Judge, specially concurring:

For the reasons set out in my special concurrence in *Drake v. Kemp,* 762 F.2d 1383 (11th Cir.1985) (en banc), I concur in the judgment of the court.

KRAVITCH, Circuit Judge:

I join in Judge Clark's special concurrence.

CLARK, Circuit Judge, concurring:

I join in Section One of the majority opinion concluding that there was a *Sandstrom* violation, but that the error was harmless beyond a reasonable doubt. With respect to Section Two, I concur in the result but I cannot join the opinion of the majority for the reasons stated in my special concurrence in *Brooks v. Kemp,* 762 F.2d 1383 (11th Cir.1985) (en banc). In my view, the majority's use of the *Strickland v. Washington* prejudice standard to determine whether an argument is or is not fundamentally unfair is in conflict with existing Supreme Court precedent and the constitutional considerations underlying that precedent. Nevertheless, any error in the sentencing phase of Richard Tucker's trial was harmless pursuant to the test enunciated by the Supreme Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

JOHNSON, Circuit Judge, specially concurring in part and dissenting in part:

## I. THE *SANDSTROM* ISSUE

Although I endorse the majority's conclusion that the instruction on the issue of intent unconstitutionally shifted the burden of proof, I cannot agree that this error was harmless.

The Supreme Court has declined, thus far, to resolve the question of whether the shifting of a presumption so integral to the concept of a fair trial can ever result in harmless error. *Francis v. Franklin,* —— U.S. ——, ——, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). But the Court has affirmed the pre-existing federal requirement that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This Court embraced a similar standard in *Lamb v. Jernigan,* 683 F.2d 1332 (11th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983), where it held that error in the case of a *Sandstrom* violation can only be harmless if it applied to an element of the crime which was not at issue at the trial, or if the evidence was overwhelming as to the defendant's guilt. 683 F.2d at 1342. *See also, Patterson v. Austin,* 728 F.2d 1389 (11th Cir.1984); *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984).

I cannot conclude, under the circumstances of this case, that the error perpetrated by the court's instruction on the issue of intent was harmless beyond a reasonable doubt.[1] It is uncontested that petitioner's intent was at issue at the trial. Moreover, it cannot be said that evidence of petitioner's guilt on the issue of intent was "so overwhelming that the *Sandstrom* error cannot have contributed to the jury's decision to convict." *Lamb v. Jernigan, supra,* 683 F.2d at 1342. The vast majority of the evidence against Tucker was entirely circumstantial: he had been seen driving the victim's car after the day of the crime; his fingerprints were identified on one of the charge cards taken from her wallet. This circumstantial showing does not constitute "overwhelming evidence" that Tucker committed the act in question, much less that he committed it with the requisite intent. And the two statements made by

---

1. *Engle v. Koehler,* 707 F.2d 241, 246 (6th Cir. 1983), *aff'd by an equally divided court,* —— U.S. ——, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984), which was relied upon by the majority in *Davis v. Zant,* provides additional support for this conclusion. Noting that the prejudicial effect of a *Sandstrom* violation is largely a function of the defense asserted at trial, 707 F.2d at 246, the Sixth Circuit held that where a defendant asserts a lack of *mens rea* "a *Sandstrom* instruction may be extremely prejudicial, even if overall proof of intent or malice is substantial." *Id.* While this opinion provided little support for the petitioner in *Davis,* who had raised a non-participation defense, it suggests the inapplicability of the harmless error rule to the instant case, where the defense raised was lack of *mens rea.*

Tucker to police concerning the crime were wholly contradictory on the question of who committed the murder. It seems highly unlikely that the jury found this scant and conflicting body of evidence so compelling that it could not have been influenced by the court's instruction. I am therefore unable to conclude that an instruction which shifted the burden of proof on the crucial and disputed element of intent was harmless beyond a reasonable doubt.

## II. THE PROSECUTORIAL ARGUMENT

The majority held in *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985), that a petitioner who seeks to challenge a prosecutorial argument must demonstrate a "reasonable probability" that improprieties contained in the argument affected the outcome of the proceeding. 762 F.2d 1383; *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While this "prejudice" requirement has become the law of the Circuit, it must nonetheless be applied in a way which is consistent with the other constraints imposed by the Constitution on capital sentencing proceedings. Because its application by the majority undermines the long-standing requirement of individuation in capital sentencing, I dissent.

### A. Prosecutorial Expertise

The majority found improper the prosecutor's discussion of the infrequency with which attorneys in his office seek the death penalty, but the majority refused to find this discussion prejudicial because the subsequent comments of the prosecutor and defense counsel placed responsibility for the decision on the jury. I cannot be so sanguine about the ameliorative effect of later references to the jury's responsibility. As I have stressed on other occasions, see *Brooks v. Kemp, supra*, 762 F.2d at 1424 (Johnson, J., dissenting); *Wm. Boyd Tucker v. Kemp*, 762 F.2d 1480 (1985) (Johnson, J., concurring specially), this type of argument places the full weight of the prosecutor's office behind the suggestion that an appropriate sentencing decision has already been made by knowledgeable authorities. Formal reminders that the jury retains discretion to make the final decision cannot prevent such arguments from impairing the fundamental fairness of the proceeding.

### B. Sexual Offenses

The majority also concludes, after some deliberation, that the petitioner was not prejudiced by the prosecutor's statements that Tucker had raped the victim and compelled her to perform oral sodomy before her murder. With this conclusion, too, I must disagree. When the body of the victim was found, it was sufficiently decomposed that it was impossible to tell if sexual contact of any type had taken place. The evidence relied upon by the prosecution consisted solely of the fact that the body had been found unclothed, that a Caucasian pubic hair had been found on or near Tucker's clothes, and that the victim was reported, in one confession, to have been on her knees at some time before she was killed. I have difficulty agreeing with the majority that these facts, in and of themselves, give rise to an inference that the victim was raped. None of Tucker's conflicting confessions suggested that a sexual assault of any type had taken place; and his explanation that he had removed the victim's clothes to destroy possible fingerprints was not unreasonable. Yet even if this evidence were to give rise to an inference of rape, it most clearly does not support an inference of oral sodomy; and I cannot agree with the majority that the prosecutor's statement concerning oral sodomy was not prejudicial.

The majority suggests that this statement did not prejudice the petitioner because, given the "reasonable reference to rape," the "issue of sexual assault was already before the jury." 762 F.2d at 1509. This application of the prejudice requirement, however, gives tacit approval to a lack of individuation in capital sentencing that the Constitution has been read to proscribe. *See Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Because a petitioner may have committed a rape does not mean he should be sentenced under allegations that he also compelled oral sodomy. The latter charge, which is not based on the record, evokes a range of images and emotions in members of the jury which have no relation to the petitioner. Because it deprives him of individualized consideration, by making an unsupported charge which engenders strong emotional response, this comment cannot help but undermine the reliability of the proceeding.

## C. Parole and Jury Responsibility for Future Violence

The majority makes a similar error in considering the prosecutor's comments concerning future parole for petitioner and the jury's responsibility for his future violence. The majority states that these comments were improper because they were based on speculation rather than fact, and required the jury to assume responsibility for the future conduct of corrections personnel. But it refuses to find these statements prejudicial, as they "probably added little to the future dangerousness arguments which were properly considered by the jury." 762 F.2d at 1509. The "little" to which the majority refers is, however, the difference between a presentation which excites only those emotions relevant to the acts or characteristics of the petitioner, and a presentation which appeals to an entire spectrum of emotions and fears which relate not to the petitioner but to the release of violent criminals in general. *See Brooks v. Kemp, supra,* 762 F.2d at 1424 (Johnson, J., dissenting). A jury distracted by fears of a speculative release in which it would have no part, and a speculative course of violence which might never occur, cannot give the petitioner before them the careful, individualized consideration the Constitution requires.

I cannot approve an argument which so clearly transgresses the constitutional bounds on capital sentencing. Nor can I join an opinion which uses the newly-established prejudice requirement to vitiate the long-standing constitutional mandate of individuation in sentencing.

## ON PETITION FOR REHEARING

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby Denied.

CLARK, Circuit Judge, specially concurring, with whom KRAVITCH, Circuit Judge, joins:

I concur in the decision of the en banc court to deny rehearing in this case. How-ever, I do so only because I believe that even using the standard promulgated by the Supreme Court in *Caldwell v. Mississippi,* —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), it can safely be said in this case that the prosecutor's improper argument "had no effect on the sentencing decision" and thus, the death sentence meets the constitutional "standard of reliability that the Eighth Amendment requires." *Caldwell, supra,* at ——, 105 S.Ct. at 2646.