Richard TUCKER, Petitioner,

v.

Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent.

No. 83–8466.

United States Court of Appeals, Eleventh Circuit.

Nov. 7, 1985.

Joseph M. Nursey, Millard Farmer, Kenneth Rose, Atlanta, Ga., for petitioner.

Susan V. Boleyn, William B. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM*, Senior Circuit Judge.

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1488**

FAY, Circuit Judge:

In 1978, a Bibb County, Georgia jury found Richard Tucker, Jr., guilty of malice murder and kidnapping with bodily injury. He was sentenced to two death penalties. After exhausting his state remedies,[1] Tucker filed a habeas corpus petition in the United States District Court for the Middle District of Georgia. The district court denied relief. On appeal, we reversed in part and remanded for a new sentencing hearing. *Tucker v. Francis*, 723 F.2d 1504 (11th Cir.), *vacated for reh'g en banc*, 723 F.2d at 1518 (11th Cir.1984). Because we found that the prosecutor's closing argument during the sentencing phase of Tucker's trial was improper[2] and denied Tucker

"a fundamentally fair sentencing proceeding," *id.* at 1508, we did not reach the issues of whether Tucker's trial counsel was ineffective at sentencing or whether an evidentiary hearing should have been held in the district court. *See id.* at 1516, 1518 (Parts IV and VII).

Our panel opinion was vacated, however, when the Eleventh Circuit granted a rehearing en banc.[3] The en banc court decided that Tucker was not entitled to receive another sentencing hearing. *Tucker v. Kemp*, 762 F.2d 1496 (11th Cir.1985) (en banc).[4] The en banc court therefore remanded the case to this panel for resolution of the two issues we did not reach.[5]

1. On direct appeal the Supreme Court of Georgia affirmed Tucker's convictions and death sentences. *See Tucker v. State*, 245 Ga. 68, 263 S.E.2d 109 (1980). The United States Supreme Court denied certiorari. 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980).

   In March, 1981 Tucker filed an application for state habeas corpus relief in the Superior Court of Butts County, Georgia. An evidentiary hearing was conducted and on September 11, 1981 the superior court judge denied Tucker's claim. In December, 1981 Tucker filed a second habeas corpus petition in the same Butts County court. The court permitted "the filing of this second Habeas Corpus Petition to examine a question which was not included in Petitioner's first Petition," *Tucker v. Zant*, No. 5363, slip op. at 1 (Ga.Super.Ct. Jan. 29, 1982), and on January 29, 1982 denied the petition.

   Tucker then applied to the Supreme Court of Georgia for a certificate of probable cause to appeal the denial of his state habeas petitions. On March 24, 1982 his application was denied and several months later the United States Supreme Court declined review. 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

2. While noting "that prosecutors can be zealous in their advocacy," 723 F.2d at 1508 (*citing Brooks v. Francis*, 716 F.2d 780 (11th Cir.1983)), we nonetheless concluded that "[i]n this case, the prosecutor's closing argument was a speculative parade of horrors that had little to do with aiding the jury in deciding whether to sentence Richard Tucker to death." 723 F.2d at 1508.

3. *See Tucker v. Kemp*, 762 F.2d 1496, 1500 (11th Cir.1985) (en banc). *See generally* 11th Cir.R. 27(c) ("[u]nless otherwise expressly provided, granting a suggestion for rehearing en banc vacates the panel opinion and stays the mandate").

4. Although the Eleventh Circuit found that several of the prosecutor's closing arguments were improper, the court concluded that Tucker did not show "a reasonable probability that their absence would have led to a different outcome." 762 F.2d at 1509. The en banc court examined the totality of the circumstances and held that the depravity of the murder, "Tucker's previous conviction of a vicious capital crime and testimony about his desire to kill again, all made the case very strong for the imposition of the death penalty. Although similar arguments might be fundamentally unfair in a less egregious case, they did not render this sentencing fundamentally unfair." *Id.*

5. This case was taken en banc to consider two of Tucker's six constitutional claims. The en banc court decided that the instructions on intent at Tucker's capital trial impermissibly shifted the burden of proof in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), but concluded that the error was harmless beyond a reasonable doubt. The court also decided that the prosecutor's closing argument during the sentencing phase of Tucker's trial did not render the sentencing fundamentally unfair. *See supra* note 4.

   The Eleventh Circuit reinstated our panel opinion affirming the district court's denial of habeas relief on the following claims: 1) that the prosecutor's comment on Tucker's silence violated his constitutional rights; 2) that trial counsel's failure to investigate and prepare for trial denied Tucker his right to effective assistance of counsel at the guilt/innocence phase of his trial; and 3) that the trial court's failure to instruct the jury on the law of confessions as required by Georgia law, when considered in conjunction with the admission of contradictory, disputed and uncounseled confessions, violated Tucker's constitutional rights.

We now affirm the district court's denial of relief on these two issues.

### I.

On September 19, 1978 the badly decomposed body of Edna Sandefur was discovered in a secluded area of Macon, Georgia. Two days later, Tucker admitted his complicity in the abduction and murder of Mrs. Sandefur but claimed that his friend, Willie Lee Mahone, had killed her. In a later statement to police, however, Tucker confessed that he alone abducted and killed Mrs. Sandefur. He stated that after the murder he undressed the victim and burned her clothes to destroy fingerprints. He took the police to the scene of the crime, identified the murder weapon (an iron pipe) and the charred remains of Mrs. Sandefur's clothing. Finally, Tucker took police officers to where he had disposed of Mrs. Sandefur's purse and credit cards.

Tucker's confession was tape recorded and played for the jury during the trial. Several eyewitnesses also testified that they saw Tucker driving the victim's car shortly after the murder. Willie Lee Mahone testified that on the night of the murder Tucker bragged about killing "a white woman" and "said he enjoyed killing ... and [that] he'll do it again one day." Transcript of Evidence, Volume III, at 676–77. An FBI witness identified Tucker's thumb print on one of the victim's credit cards. And an expert witness testified that "a medium brown Caucasion pubic hair" was found on clothes seized in Tucker's apartment several days after the killing. *Id.*, Volume II, at 649. Tucker is black; Mrs. Sandefur was white.

The sentencing phase began after the jury found Tucker guilty of murder and kidnapping with bodily harm. Tucker, who did not testify at trial, took the stand. He claimed that he made the confession that was introduced at trial only to stop the police from pressuring him. According to Tucker, it was Mahone who killed Mrs.

Sandefur; Tucker merely undressed the victim to remove fingerprint evidence.

On cross-examination, Tucker was asked about his denial of the confession and his previous record, which included the 1964 murder of his aunt and two burglary charges, one stemming from an incident of attempted rape. Tucker had pled guilty to these crimes.

The prosecution called Frank Sagnibene, Tucker's parole officer, to testify at sentencing. Tucker had been paroled from his first murder conviction six months before this second murder conviction. Sagnibene told the jury that Tucker, shortly after his arrest, admitted to the murder, indicating that he was the sole perpetrator. This rebuttal testimony was inconsistent with Tucker's claim that Mahone had killed Mrs. Sandefur.

Following closing arguments by each attorney, the jury was charged with its sentencing task. After a short deliberation, it returned death sentences for each crime.

### II.

Tucker argues that the district court erred in denying his claim that he received ineffective assistance of counsel at the sentencing phase of his trial. This claim must be assessed in light of the standard recently set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail under this standard, Tucker must demonstrate not only that his counsel's performance was deficient but also that he suffered actual prejudice as a result. *Id.* at ——, 104 S.Ct. at 2064.

■ Tucker was represented by attorneys John Robert Sikes and Robider Markwalter. Both were experienced in the trial of criminal cases. Tucker faults their performance, however, claiming that they did not attempt to develop or present mitigating evidence at the sentencing trial.[6] In response to this charge, Sikes and Markwalter testified at the state habeas hear-

---

**6.** Tucker asserts that "[t]here were numerous potential mitigating circumstances ... which trial counsel should have investigated and presented to the jury." Brief for Appellant at 24. Specifically, Tucker claims that his "history of emotional disturbance," his "turbulent family history" and his "history of good behavior in prison," *id.* at 24, 25, should have been presented at the sentencing trial.

ing. Their testimony, credited by the state court,[7] indicates that they provided Tucker with more than constitutionally adequate assistance of counsel.

Both Sikes and Markwalter interviewed Tucker and discussed with him their strategy for the penalty phase. They asked Tucker for the names of any potential witnesses they could call. Markwalter testified: "We discussed with Mr. Tucker that phase of the trial and sought his assistance and who we might call and people who might have some knowledge of him. Couldn't produce anything." Transcript of state habeas hearing held on May 29, 1981 (hereinafter "Transcript") at 54.

Sikes explained why no witnesses were presented:

> There wasn't anybody ... to put up. Mr. Tucker had no family. I think perhaps he had one relative left, a cousin, Rosa Lewis, I believe is her name, and Rosa had not seen him in several years. He had only been out of the penitentiary for a very short period of time at the time this sentencing took place. She was not at all helpful. We talked with her, and she just could not give us anything that would be in mitigation of the offense.

*Id.* at 37. Additionally, had Rosa Lewis been called to testify at Tucker's sentencing she would have been subject to cross-examination concerning her knowledge of Tucker's "prior prison record and that sort of thing." *Id.* at 13.

Thus, Sikes and Markwalter made a strategic decision to offer only the testimony of Richard Tucker at the sentencing trial. As Sikes testified: "The idea behind that was to try to invoke as much sympathy and empathy for him as we could from the Jury." *Id.* at 36. Although unsuccessful, that decision was reasonable under the circumstances and cannot be considered error.

Through Tucker's testimony, Sikes and Markwalter brought out Tucker's drug and alcohol use prior to the commission of the crime, Tucker's contention that Willie Lee Mahone was responsible for Mrs. Sandefur's murder and information detailing the conditions at Reidsville State Penitentiary during Tucker's previous incarceration. Through cross-examination of Frank Sagnibene, Tucker's parole officer, Sikes and Markwalter brought out Sagnibene's impression of Tucker: "He was very orderly, very neat, very polite, quiet. He was very good as a parolee." Transcript of Evidence, Volume III, at 884. Finally, Sikes argued on Tucker's behalf, emphasizing how cooperative Tucker was with the police.

Although Tucker now claims that more mitigating evidence could and should have been presented to the jury, *see supra* note 7, we agree with the district court's conclusion that counsel did as well as could be expected under the circumstances. The state court noted: "While it may be true that Counsel put up a relatively scant defense, the finest lawyer in the country could not put up a defense that did not exist. Both attorneys appeared to be intelligent and concerned defense lawyers." *Tucker v. Zant*, No. 5019, slip op. at 5 (Ga.Super.Ct. Sept. 11, 1981). The state court's factual findings make clear that Sikes and Markwalter's performance did not fall below sixth and fourteenth amendment standards.[8]

---

7. In this federal habeas challenge to a state criminal judgment, the state court's findings of fact made in the course of deciding Tucker's ineffectiveness claim are binding on the federal court to the extent provided by 28 U.S.C. § 2254(d). *See infra* note 9; *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Although Tucker claims "that the material facts were not adequately developed at the State court hearing" 28 U.S.C. § 2254(d)(3) (1976), and that an evidentiary hearing should have been held in the district court, we disagree. *See infra* Section III. We therefore presume that the factual findings made in *Tucker v. Zant*,

No. 5019 (Ga.Super.Ct. Sept. 11, 1981), are correct.

8. Even assuming that the challenged conduct of counsel fell below sixth and fourteenth amendment standards, Tucker suffered insufficient prejudice to warrant setting aside his death sentences. Given the overwhelming aggravating factors, the depravity of the murder and the testimony about Tucker's desire to kill again, there is no reasonable probability that the paucity of evidence in mitigation proffered by Tucker, *see supra* note 6, would have affected the jury's conclusion.

### III.

Tucker next claims that the district court erred in denying him an evidentiary hearing. He argues "that the material facts were not adequately developed at the State court hearing," 28 U.S.C. § 2254(d)(3) (1976),[9] largely because he "did not have the funds necessary to bring to court witnesses other than those who would voluntarily appear and pay their own expenses." Brief for Appellant at 37. Thus, Tucker concludes that the district court's refusal to grant a new hearing violates the principles articulated in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and *Thomas v. Zant*, 697 F.2d 977 (11th Cir.1983). We disagree.

*Thomas*, interpreting *Townsend* for this circuit, held that a federal habeas petitioner must satisfy two requirements in order to obtain an evidentiary hearing based on a § 2254(d)(3) claim:

first, that a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was "material" (in the language of section (d)(3)) or "crucial to a fair, rounded development of the material facts" (in the language of *Townsend* ); second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass.

697 F.2d at 986 (footnote omitted).

Attempting to satisfy these requirements, Tucker submitted in support of his motion for an evidentiary hearing below, "a list of eight potential witnesses who would testify to mitigating circumstances." Brief for Appellant at 36. Tucker claims that these witnesses would have detailed and explained his "turbulent family history." *Id.* at 25. Because "[n]one of these potential witnesses had been contacted or investigated by trial counsel," *id.* at 36, Tucker contends his trial counsel was ineffective.[10]

We have already concluded, however, that counsel was not ineffective. Their decision to present only Tucker's testimony at the sentencing trial was a reasonable strategy under the circumstances. Sikes and Markwalter testified before the state habeas court and were subject to forceful cross-examination concerning their preparation and performance. They admitted that they interviewed no potential witnesses other than Tucker's cousin, Rosa Lewis. Ms. Lewis testified at the state hearing about Tucker's family background. Reviewing the transcript of the state hearing convinces us that the facts necessary to Tucker's ineffective assistance claim were adequately developed. The existence of the eight potential witnesses and their purported testimony does not alter this conclusion.[11]

---

9. 28 U.S.C. § 2254(d) provides in pertinent part:

   (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

   \*    \*    \*    \*    \*    \*

   (3) that the material facts were not adequately developed at the State court hearing;

10. The remainder of the issues raised by Tucker are issues which needed no evidentiary development. *See supra* note 5.

11. Even were we to find that a "material" or "crucial" fact was not adequately developed at the state hearing, we would nonetheless be unable to conclude that this "was not attributable to petitioner's inexcusable neglect or deliberate bypass." *Thomas*, 697 F.2d at 986.

   First, Tucker does not explain why he did not develop the "material" or "crucial" fact concerning Sikes and Markwalter's preparation during their cross-examination at the state habeas hearing. Second, Tucker does not explain why he did not attempt to submit affidavits to the state court of the eight potential witnesses who would not "voluntarily appear and pay their own expenses." Brief for Appellant at 37. Alternate methods of submitting testimony are available; these methods, usually less costly than live testimony, were not used by Tucker.

Accordingly, the judgment of the district court denying Tucker an evidentiary hearing and denying the writ of habeas corpus on the ineffective assistance of counsel at sentencing issue is

AFFIRMED.