Richard TUCKER, Petitioner,

v.

Ralph KEMP, Warden, Georgia
Diagnostic and Classification
Center, Respondent.

Civ. A. No. 87–117–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

May 19, 1987.

Millard Farmer, Atlanta, Ga., for petitioner.

Susan V. Boleyn, Atlanta, Ga., for respondent.

## ORDER

OWENS, Chief Judge.

This constitutes the second time petitioner Richard Tucker's application for 28 U.S.C. § 2254 federal habeas corpus relief, has been before this court. In 1978, a Bibb County, Georgia jury found the petitioner Richard Tucker, Jr. guilty of malice murder and kidnapping with bodily injury. Tucker was sentenced to two death penalties. He is scheduled to be executed on May 22, 1987, at 7:00 p.m. By this second habeas petition he seeks to again attack that conviction and death sentence and to stay his scheduled execution.

*The Evidence*

The United States Court of Appeals for the Eleventh Circuit summarized the evidence presented to petitioner's trial jury as follows:

On September 19, 1978, the badly decomposed body of Edna Sandefur was discovered in a secluded area of Macon, Georgia. Two days later, Tucker admitted his complicity in the abduction and murder of Mrs. Sandefur but claimed that his friend, Willie Lee Mahone, had killed her. In a later statement to police, however, Tucker confessed that he alone abducted and killed Mrs. Sandefur. He stated that after the murder he undressed the victim and burned her clothes to destroy fingerprints. He took the police to the scene of the crime, indentified the murder weapon (an iron pipe) and the charred remains of Mrs. Sandefur's clothing. Finally, Tucker took police officers to where he had disposed of Mrs. Sandefur's purse and credit cards.

Tucker's confession was tape recorded and played for the jury during the trial. Several eyewitnesses also testified that they saw Tucker driving the victim's car shortly after the murder. Willie Lee Mahone testified that on the night of the murder Tucker bragged about killing "a white woman" and "said he enjoyed killing ... and [that] he'll do it again one day." Transcript of Evidence, Volume III, at 676–77. An FBI witness identified Tucker's thumb print on one of the victim's credit cards. An expert witness testified that "a medium brown Caucasion pubic hair" was found on clothes seized in Tucker's apartment several days after the killing. *Id.*, Volume II, at 649. Tucker is black; Mrs. Sandefur was white.

The sentencing phase began after the jury found Tucker guilty of murder and kidnapping with bodily harm. Tucker, who did not testify at trial, took the stand. He claimed that he made the confession that was introduced at trial only to stop the police from pressuring him. According to Tucker, it was Mahone who killed Mrs. Sandefur; Tucker merely undressed the victim to remove fingerprint evidence.

On cross-examination, Tucker was asked about his denial of the confession and his previous record, which included the 1964 murder of his aunt and two burglary charges, one stemming from an incident of attempted rape. Tucker had pled guilty to these crimes.

The prosecution called Frank Sagnibene, Tucker's parole officer, to testify at sentencing. Tucker had been paroled from his first murder conviction six months before this second murder conviction. Sagnibene told the jury that Tucker, shortly after his arrest, admitted to the murder, indicating that he was the sole perpetrator. This rebuttal testimony was inconsistent with Tucker's claim that Mahone had killed Mrs. Sandefur.

Following closing arguments by each attorney, the jury was charged with its sentencing task. After a short deliberation, it returned death sentences for each crime.

*Tucker v. Kemp,* 776 F.2d 1487, 1489 (11th Cir.1985).

*Procedural History*

Upon conviction, the petitioner appealed to the Supreme Court of Georgia. That court affirmed the conviction. *See Tucker v. State,* 245 Ga. 68, 263 S.E.2d 109 (1980). The United States Supreme Court denied *certiorari* in *Tucker v. Georgia,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980). In March of 1981, the petitioner filed for state habeas relief in the Superior Court of Butts County, Georgia. After an evidentiary hearing, the superior court judge denied relief on September 11, 1981. Later, the petitioner filed a second state habeas in the same superior court. On January 29, 1982, this petition was also denied. The United States Supreme Court again denied *certiorari. See Tucker v. Zant,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982).

The petitioner then filed for habeas relief in this court on November 15, 1982. The court denied the petition and issued probable cause to appeal and permission to proceed *in forma pauperis* on June 24, 1983.

On appeal, a panel of the Eleventh Circuit reversed in part and remanded for a new sentencing hearing. *See Tucker v. Francis*, 723 F.2d 1504, *vacated for reh'g en banc*, 723 F.2d at 1518 (11th Cir.1984). The *en banc* court reversed the panel's remand for a new sentencing hearing in *Tucker v. Kemp*, 762 F.2d 1496 (11th Cir.1985) (*en banc*), and remanded the case back to the panel to resolve issues not yet reached. The panel affirmed this court's denial of habeas relief. *See Tucker v. Kemp*, 776 F.2d 1487 (11th Cir.1985). The United States Supreme Court declined review in *Tucker v. Kemp*, —— U.S. ——, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986). Last week petitioner filed his second round of habeas corpus petitions in the Georgia state courts. The Superior Court of Butts County, Georgia dismissed his petition on May 15, 1987, and the Georgia Supreme Court denied his application for a certificate of probable cause to appeal on May 18, 1987.

### Issues

Petitioner, in this second habeas proceeding, raises four grounds for relief: (1) that police officers obtained incriminating statements from him in violation of his right to counsel; (2) that inflammatory and prejudicial photographs of the body of the victim were admitted as evidence at his trial; (3) that he was denied the right to an independent psychiatric evaluation; and (4) that the jury was never instructed that their verdict on the sentence to be imposed must be unanimous.

### Abuse of the Writ?

The respondent state official moves this court to dismiss Tucker's second petition on the ground that it is an abuse of the writ.

Rule 9(b) of the Rules Governing Section 2254 Cases provides:

Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b), 28 U.S.C.A. foll. § 2254 (West 1977). This codifies the judicially developed doctrine of abuse of the writ as stated in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). *See also Raulerson v. Wainwright*, 753 F.2d 869, 873 (11th Cir.1985). As can be seen, Rule 9(b) concerns two types of successive writs. The first is when the petitioner presents an issue that was not previously presented in a federal habeas corpus petition. *See also Funchess v. Wainwright*, 788 F.2d 1443, 1445 (11th Cir.1986); *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir.1985). The second is when the petitioner presents an issue already raised in a previous federal habeas. *See also Adams v. Wainwright*, 804 F.2d 1526, 1533 (11th Cir.1986).

### A. Ground One—Abuse of the Writ?

■ The first ground of petitioner's second habeas states as follows:

An inculpatory statement of Petitioner obtained by Commander Charles W. Bishop and Lieutenant Robert Hernandez of the Macon Police Department on September 22, 1978, was obtained as a result of in custody police interrogation after Petitioner had sought the appointment of counsel at his commitment hearing. This uncounseled statement was obtained in violation of the Georgia Constitution and the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Petitioner's Brief, p. 4). The fifth ground of petitioner's previous federal habeas states as follows:

E. *The Introduction of Petitioner's Statements at the Trial Violated Petitioner's Rights as Guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments*

20. Introduction at Petitioner's trial of statements allegedly made by Petitioner pursuant to law enforcement interrogation denied Petitioner's right against self-incrimintion, right to a reliable, non-arbitrary sentencing proceeding, right to counsel, right to a fair trial, and right to

due process of law as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

*Facts Supporting Petitioner's Allegation that the Admission of Alleged Statements by Petitioner at Trial Violated Petitioner's Constitutional Rights*

21. a) Petitioner's convictions and sentences of death were founded on a confession obtained without counsel and without a knowing waiver of the right to remain silent and the right to counsel. Petitioner asked for an attorney prior to his statement, but was told only that he could have a lawyer at his hearing.

(Petitioner's First Habeas Brief, p. 7). In this court's considered judgment, the first ground of petitioner's second habeas does not raise a new and different ground for relief.

As stated by the United States Supreme Court, under such circumstances:

[c]ontrolling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Sanders*, 373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted). There is no question that the petitioner's first habeas was decided adversely to the petitioner. Further, this determination was on the merits. The question then becomes whether the ends of justice would be served by reaching the merits of the second petition.

To determine this, the court must look to objective factors. Examples are whether a full and fair hearing was accorded to the petitioner in his first petition or whether there has been an intervening change in the facts or in the relevant law. *See Adams* 804 F.2d at 1533; *Witt*, 755 F.2d at 1397. The burden to show that the ends of justice would be served is on the applicant. *Sanders*, 373 U.S. at 17, 83 S.Ct. at 1078.

Petitioner claims that the recent Supreme Court case of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), is a change in the law satisfying the ends of justice requirement. The holding in *Jackson*, as stated by the majority, is:

[w]e thus hold that, if *police initiate* interrogation *after a defendant's assertion*, at an arraignment or similar proceeding, *of his right to counsel*, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

*Id.* at ——, 106 S.Ct. at 1411, 89 L.Ed.2d at 642. (emphasis added). The question of whether *Jackson* is a change in the law, is precluded by its inapplicability to the case at bar.

Petitioner's brief makes plain that the statement at issue is the recorded confession given by him to police after his commital hearing on September 22, 1978. However, after a *de novo* review of the entire state trial record and transcript of the pretrial suppression hearing, this court finds that two facts necessary for *Jackson* to be relevant to this confession are missing. First, petitioner did not request counsel. On September 21, 1978, Tucker was read his *Miranda* rights by police, to include his right to counsel. Immediately thereafter, he signed a "waiver of counsel" form which again informed the petitioner that he had the right to consult with an attorney before making any statement. At no time during the remainder of that day did petitioner request the presence of a lawyer (Trial Record, pp. 484–489).

The next day, police officers Bishop and Hernandez escorted Tucker to municipal court for a commital hearing. The hearing was continued when the judge was informed by Bishop that Tucker was without counsel. At no time during the hearing did Tucker himself request counsel. While Bishop was transporting Tucker back to jail, Tucker stated that he wanted to talk again with both Bishop and Hernandez.

(Trial Record, pp. 489–490, 504; Record of Motion to Suppress Hearing, p. 44).

Bishop took Tucker to his office and again read him his *Miranda* rights, to include his right to counsel before making any statement. He was again given a waiver form which listed his rights. Tucker was specifically asked if he understood those rights and he indicated he did. Thereupon, Tucker signed another waiver of counsel form. After this, the officers proceeded to tape record the confession made by Tucker that is at issue here. (Trial Record, pp. 490–493). It is clear that at no time did petitioner request the presence of counsel. For a waiver to be invalid there must be an *assertion by the defendant* that he desires the presence of counsel. *See id.*

Further, the police did not "initiate" the interrogation. On the contrary, the record makes it clear that it was Tucker who requested to have a talk with Officers Bishop and Hernandez. The officers did not request or encourage Tucker to volunteer the statements. The rule in *Jackson* requires that it be the officers who initiate the interrogation. *See id.*

Accordingly, since the petitioner has not shown that *Jackson* is applicable, he has not met his burden of showing that the ends of justice would be furthered by reaching the merits of this ground of his petition again. To do so would be an abuse of the writ.

B. *Ground Two—Abuse of the Writ?*

The second ground of petitioner's second habeas states as follows:

Gruesome, inflammatory, prejudicial photographs of the decomposed body of the victim which were in no way probative of any issue properly before the jury, were admitted as evidence at Petitioner's trial in violation of rights guaranteed by the Georgia Constitution and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Petitioner's Brief, p. 6). The petitioner agrees that he previously raised this ground. There is no question that it was decided adversely to him on the merits.

However, he asserts that the ends of justice would be served if this ground is reconsidered under the intervening decision of *Brown v. State*, 250 Ga. 862, 302 S.E.2d 347 (1983). *Brown* concerns only the question of when photographs are inflammatory and prejudicial under Georgia's state law. Questions of pure state law do not raise issues of constitutional dimension for federal habeas purposes. *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983). *Brown* does not evidence applicable law which would require reconsideration of the merits of this ground.

Petitioner also argues that the United States Supreme Court's granting of *certiorari* in *Thompson v. Oklahoma*, —— U.S. ——, 107 S.Ct. 1284, 94 L.Ed.2d 143 (1987), mandates that his execution should be stayed pending decision by the Court of *Thompson*. The issues presented to the Court in *Thompson* are:

(1) May admission of inflammatory evidence [*i.e.*, two photos of murder victim] in capital case against 16–year-old defendant be deemed harmless error merely because of strong evidence of guilt, when such evidence also prejudices defendant's right to fair, full jury consideration of all mitigating circumstances—including age—during death penalty deliberations? (2) Does infliction of death penalty on individual who was child of 15 at time of crime constitute cruel and unusual punishment under Eighth and Fourteenth Amendments?

55 U.S.L.W. 3597 (March 3, 1987). It is clear tht these issues are not relevant to petitioner's case. *Thompson* involves the rights of a minor. Petitioner was not a minor at the time of the murder of Mrs. Sandefur. Therefore, petitioner has not met his burden of demonstrating that the ends of justice would be met by again reaching the merits of this ground. To do so would also be an abuse of the writ.

C. *Ground Three—Abuse of the Writ?*

The next ground of petitioner's second habeas states:

Richard Tucker was denied the right to an *independent* psychiatric evaluation in

violation of the Georgia Constitution and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. (Petitioner's Brief, p. 7) (emphasis added). Petitioner asserts and the court concurs that this concerns an issue that was not raised in petitioner's first habeas. Thus, the petitioner has the burden of showing that the failure to present "the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." *Witt*, 755 F.2d at 1397.

Petitioner asserts that he did not raise this issue before due to status of the law at the time of trial. Petitioner asserts that it was previously clear that the appointment of a psychiatrist to evaluate an indigent defendant was solely in the discretion of the trial judge. Petitioner contends, however, that the United States Supreme Court decision of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), represents such a change in the law that the ends of justice warrant a consideration on the merits of this new ground. According to the petitioner, the Court in *Ake* made it clear "that the right to an *independent* psychiatric evaluation exists not only where sanity is involved but also where the accused's mental condition is relevant to the issue of whether the death penalty is imposed." (Petitioner's Brief, p. 8) (emphasis added).

The petitioner states the following facts in support of this ground:

Prior to trial, Petitioner's trial attorneys, noting symptoms of serious mental illness in Richard Tucker, moved the trial court for a psychiatric evaluation. The trial court, after consideration of the evidence, found that Petitioner exhibited sufficient specific symptoms of mental illness and ordered that Petitioner be evaluated by the state psychiatrist at Central State Hospital in Milledgeville, Georgia. (State Trial Record at 26–28). This evaluation was to cover both Petitioner's competency to stand trial and his sanity at the time of the offense. (R–26). The trial judge, in his order, noted that Richard Tucker had previously received

psychiatric treatment at Reidsville. (R–28). The trial judge also appointed a state psychologist in Macon to evaluate Petitioner. (R–29). Central State Hospital conducted its evaluation on one day and Wayne Buffington, the state psychiatrist in Macon, evaluated Petitioner in less than 1½ hours. (T. 12–15–78 Hrg. at 3).

(Petitioner's Brief, p. 7). It is clear, based on these facts, which adequately reflect what the record shows, that petitioner did not receive a psychiatric evaluation by a psychologist of his own choosing. The trial court appointed one for him at state expense.

The petitioner misreads the holding in *Ake*. *Ake* does not require that the state provide an *independent* psychiatrist for an indigent defendant. The Court stated:

[w]e therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, *at a minimum*, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is *not to say*, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of *his personal liking* or to *receive funds to hire his own*. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

*Id.* at 83, 105 S.Ct. at 1097. Further, the psychological evaluations of the petitioner conducted by Central State Hospital and Dr. Wayne Buffington of Macon, Georgia, clearly showed that petitioner was not able to make the necessary demonstration to the trial judge that his sanity at the time of the offense was to be a significant factor at trial. (*See* Transcript of Motion for Psychiatric Evaluation). Richard Tucker, before his trial, was provided everything that *Ake* demands. This ground is thus clearly an abuse of the writ.

### D. *Ground Four—Abuse of the Writ?*

The final ground of petitioner's habeas states as follows:

> The trial court's instruction to the jury never mentioned that their verdict on penalty must be unammimous in violation of the Georgia Constitution and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Petitioner's Brief, p. 9). This is the first time that petitioner has raised this issue.

In support of this ground for relief, the petitioner has directed the court's attention to certain legal authorities under Georgia law. However, none of these authorities support the petitioner's assertion that the trial judge must *charge* the jury that their verdict or penalty must be unanimous. Further, this court's own independent research has also failed to find such authority.

 Additionally, since this ground has not been raised in a previous habeas, the petitioner has the burden of demonstrating that the failure to present the ground was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect. *Witt*, 755 F.2d at 1397. The law in Georgia was clear at the time of petitioner's trial and sentencing, that jury verdicts must be unanimous. *See Spaulding v. State*, 232 Ga. 411, 413, 207 S.E.2d 43, 45–46 (1974). Thus, any "claim" that the jury's verdict was not unanimous was available to petitioner at trial and at the time of petitioner's various appeals and first habeas.

Petitioner, however, asserts that his appellate counsel who assisted him at his first federal habeas missed this ground due to "ineffectively fail[ing] to recognize this issue." (Petitioner's Brief, p. 7). This court does not find that this argument is credible. Petitioner's first habeas counsel, Joseph Nursey, testified at the hearing conducted by this court on May 18, 1987, that he has represented more than twenty death row inmates in post-conviction proceedings. This includes arguing death penalty cases in this and other federal district courts. Mr. Nursey has also argued death penalty cases before the United States Supreme Court. (Hearing, May 18, 1987, p. 22). It is clear that Mr. Nursey has vast experience in such cases. Counsel with this amount of experience would know the law concerning jury verdicts and would inspect the record for any indication that a jury's verdict was not unanimous.

Accordingly, the petitioner has not demonstrated that his failure to present this ground previously was not the product of inexcusable neglect. Therefore, it is an abuse of the writ.

### *Conclusion*

The petitioner has not met his burden of demonstrating that grounds one through four of his federal habeas should be considered or reconsidered on the merits. Accordingly, the petition for a writ of habeas corpus is DISMISSED pursuant to Rule 9(b). Further, petitioner's motion for stay of execution is DENIED.