**Bobby Gene GADDIS, Petitioner,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic Center, Respondent.**

Civ. A. No. CV685–101.

United States District Court,
S.D. Georgia,
Statesboro Division.

June 24, 1986.

John Matteson, Atlanta, Ga., for petitioner.

Susan V. Boleyn, Atlanta, Ga., for respondent.

### ORDER

BOWEN, District Judge.

Bobby Gene Gaddis has petitioned the Court to issue a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Petitioner collaterally attacks a judgment of the Superior Court of Jefferson County, Georgia, in which he was convicted of the offenses of burglary, armed robbery and murder. He was sentenced to terms of imprisonment for the burglary and robbery convictions and was sentenced to death on the murder charge.

His convictions and sentences were affirmed on direct appeal. *Gaddis v. State*, 239 Ga. 238 (236 SE2d 594) (1977)). Certiorari was denied by the United States Supreme Court. *Gaddis v. Georgia*, 434 U.S. 1088 [98 S.Ct. 1285, 55 L.Ed.2d 794] (1977). An extraordinary motion for new trial was denied, and the denial was upheld by [the Georgia Supreme Court] in *Gaddis v. State*, 245 Ga. 200 (265 SE2d 275) (1980).

The Superior Court of Butts County granted the petition for habeas corpus insofar as it related to the imposition of the death penalty and denied the petition as it related to the guilt phase of petitioner's trial. [The Supreme Court of Georgia affirmed the state habeas corpus court's judgment. *Zant v. Gaddis*, 247 Ga. 717, 279 S.E.2d 219 (1981).]

*Zant v. Gaddis*, 247 Ga. 717, 279 S.E.2d 219 (1981).

All of the offenses petitioner was convicted of were "related to Mr. and Mrs. Reid Oliver Fleming, Sr., and occurred on December 22, 1973." *Birt v. State*, 236 Ga. 815, 816, 225 S.E.2d 248 (1976). The Supreme Court of Georgia explained the evidence from which the jury found petitioner and co-defendant Billy Sunday Birt guilty of the offenses set forth above:

Carswell Tapley was employed by George Leisher on Leisher's farm in Washington County, Georgia. Leisher lived in Marietta and operated a used car lot. He made occasional visits to his farm. In late 1973, Leisher informed Tapley that if Tapley knew anyone who had money, Leisher knew some men who would "look into it" and pay 20% for help in "setting up a job." Tapley informed Leisher that a Mr. Fleming kept from $50,000 to $60,000 in his home....

When Leisher returned to the farm he told Tapley that he had gotten "in touch with the boys" who would contact Tapley shortly. Later, a person who identified himself as Jim Gordon called Tapley and stated he was calling from Leisher's car lot. The caller said he would be by for Tapley at nine o'clock that evening "to go get the hogs." Upon his arrival Tapley showed him the Flemings' residence in Wrens....

According to Davis, on Friday, December 21, 1973, Birt called Davis and asked him to come to a motel in Atlanta. Davis found Birt, Bobby Gaddis and Charles Reed at the motel. Girt [sic] explained to Davis that the three of them were planning a trip to Wrens to "take care of the business." Birt borrowed a car from Davis for the trip and also borrowed Davis' pistol....

Before Mr. Fleming closed his used car business on December 22, 1973, Bobby Gene Gaddis went to the car lot and made inquiries about a pickup truck. A customer who was in Mr. Fleming's office at the time made an in-court identification of Gaddis in a lineup....

[On December 23, 1973, Birt and] Gaddis described the events of that evening to Davis. According to Davis they said that after dark ... Birt, Gaddis and Reed approached the Fleming residence. When Mr. Fleming responded to their knocks at his door they told him they wished to purchase the pickup truck Gaddis had looked at earlier. When Mr. Fleming told them to return in the daylight hours, they forced their way into the house and proceeded to tie their victims. While Gaddis stood guard, Birt and Reed drove the Cadillac and the Flemings' car down a side road away from the Fleming home and returned in the Flemings' automobile. They then proceeded to torture Mr. and Mrs. Fleming. With mirth they reported to Davis that Mrs. Fleming was hard of hearing but that her hearing improved considerably when a coat hanger was tightened

about her throat. Gaddis and Birt also told Davis that they had obtained $4,000 from the Flemings. The money had been buried in fruit jars in the Flemings' smokehouse....

Dr. Larry Howard of the State Crime Laboratory performed the autopsies of Mr. and Mrs. Fleming. Dr. Howard determined that Mr. Fleming's death was due to strangulation performed quite abusively. Dr. Howard found severe abrasions and contusions around the throat of the deceased. He also observed two lines on Mr. Fleming's throat which were caused by repeated applications of a ligature. There were multiple hemorrhages about the throat, face and scalp. In addition, Dr. Howard noted abrasions on the deceased's right ear and cheek, as well as multiple contusions about Mr. Fleming's eyes. Dr. Howard observed that other head injuries were possibly caused by multiple impacts of Mr. Fleming's head against the floor. Dr. Howard also noted that Mr. Fleming's left thumb nail was split down the middle. The injuries to the structure of Mr. Fleming's throat, and the signs of oxygen deprivation, indicated that there were several episodes of asphyxia due to oxygen deprivation prior to Mr. Fleming's death. The injuries around Mr. Fleming's neck indicated that his bonds were tightened, and loosened, only to be tightened again.

Mrs. Fleming's death also resulted from strangulation. Dr. Howard noted that her eyes were bulging and hemorrhaged and that her tongue was pushed forward. He noted a bruise on her neck that had been caused by the friction created by the rubbing of the coat hanger around her neck. Blood and fluid were found in Mrs. Fleming's nose and mouth.

Dr. Howard concluded that the deaths of the two victims were not instantaneous, but resulted from prolonged episodes of abuse. He expressed the opinion that the time of death was about 10 to 11 p.m. on December 22.

*Birt v. State*, 236 Ga. at 816–20, 225 S.E.2d 248.

Petitioner's first ground for habeas relief under section 2254 is that, during the guilt-innocence phase of the trial, the jury charge regarding "intent" violated the fourteenth amendment guarantee of due process. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Petitioner claims that the "intent" charge could have been interpreted by a reasonable juror as a mandatory presumption that shifted the burden of persuasion to the petitioner or the intent element on each of the criminal charges he faced. The charge at issue was as follows:

I give you certain presumptions of law that are applicable to these cases. A presumption is a conclusion which the law draws from given facts. Each of these presumptions are rebuttable, that is, they are subject to being overcome by evidence to the contrary. They are: Every person is presumed to be of sound mind and discretion. The acts of a person of sound mind and discretion are presumed to be the product of that person's will. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.

A person will not be presumed to act with criminal intention, but the trier of the facts, that is, you the Jury, may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused person is prosecuted.

A specific intent to commit the crime charged in each of these indictments, and each count thereof, is an essential element that the State must prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis. Intent is always a question for the Jury and is ordinarily ascertained by acts and conduct. The intent may be shown in many ways, provided the Jury finds that it existed from the evidence produced before them. It my (sic) be inferred from the proven circumstances or by the act or acts and conduct or it may be presumed

when it is the natural and necessary consequences of the act.

Trial Transcript at 667–68.

It is well-settled that the due process clause of the fourteenth amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Thus, any evidentiary presumption which effectively shifts the burden of persuasion on any element of the crime charged from the state to the defendant is unconstitutional. *See Sandstrom v. Montana*, 442 U.S. at 520–24, 99 S.Ct. at 2457–59; *Lakes v. Ford*, 779 F.2d 1578, 1580 (11th Cir.1986). In the case at bar, the jury charge on intent unconstitutionally relieved the state of its burden of persuasion on the intent element of each of the crimes with which petitioner was charged. The jury cannot presume that the petitioner intended "the natural and necessary consequences of" his actions. It is for the state to prove that petitioner intended to reach the results he did with his allegedly criminal conduct.

■ While the Court has concluded that the jury charge on "intent" is unconstitutional, the analysis for habeas purposes is not completed. The Supreme Court "has not resolved whether an erroneous charge that shifts a burden of persuasion to the defendant on an essential element of an offense can ever be harmless." *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985). Recently, the Court of Appeals for the Eleventh Circuit decided that:

a *Sandstrom* error, like most other errors of constitutional magnitude, can be held harmless beyond a reasonable doubt. *Davis v. Kemp*, [752 F.2d 1515, 1520–21 (11th Cir.1985) (en banc) ]; *see also McCleskey v. Kemp*, 753 F.2d 877, 902–03 (11th Cir.1985). (en banc). *Davis* identified two situations where harmless error analysis is appropriate: (1) where the evidence of the defendant's guilt was overwhelming; and (2) where the instruc-

tion concerned an element of the crime not in issue at trial. *Davis*, 752 F.2d at 1521 citing *Lamb v. Jernigan*, 683 F.2d 1332, 1342 (11th Cir.1982), *cert. denied*, 460 U.S. 1024, 103 S.Ct. 1276, 75 L.Ed.2d 496 (1983).

(footnote omitted). *Tucker v. Kemp*, 762 F.2d 1496, 1501 (11th Cir.1985) (en banc); *see also Drake v. Kemp*, 762 F.2d 1449, 1453 (11th Cir.1985) (en banc); *Brooks v. Kemp*, 762 F.2d 1383, 1390 (11th Cir.1985) (en banc). The *Davis* standards for harmless constitutional error fall squarely within the standard enunciated by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967): "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.

The Eleventh Circuit has made it clear that the *Davis* harmless error analysis should focus on whether evidence of *intent*, rather than *guilt*, is overwhelming. *Davis v. Kemp*, 752 F.2d at 1521, n. 10; *see also Tucker v. Kemp*, 762 F.2d at 1502; *Drake v. Kemp*, 762 F.2d at 1453; *Brooks v. Kemp*, 762 F.2d at 1390. In discussing the first type of situation in which a *Sandstrom* error may be harmless, the Court in *Tucker* explained:

The reason for this focus [on whether there is overwhelming evidence of intent, rather than guilt] is apparent. In the usual case, as in *Davis* and the instant case, the erroneous intent instruction could not possibly affect the jury's determination of who the killer was. Rather, the intent instruction could have tainted only the finding of intent.

*Tucker v. Kemp*, 762 F.2d at 1502. In the case at bar, there is no evidence that the offenses for which petitioner was convicted were the result of accident or mistake. The Flemings were burglarized, robbed and murdered in a merciless manner. The *Sandstrom* error is harmless beyond a reasonable doubt because of the overwhelming evidence of the intent of the actors who committed the felonies. *Chapman v. Cali-*

*fornia,* 386 U.S. at 24, 87 S.Ct. at 828. Any doubt as to the intent of the perpetrators of these crimes is soon resolved by a review of the facts.

■ Moreover, the *Sandstrom* error is harmless beyond a reasonable doubt under the second situation identified in *Davis:* intent was not in issue. Petitioner's defense at trial was that he was not involved in the alleged felonies. The evidence under which petitioner was convicted conclusively shows that petitioner and his co-defendants went to the Flemings' home bent upon robbery and burglary. Later, when it appeared that the Flemings would not acquiesce to their demands, petitioner and his co-defendants fatally abused the elderly couple. Based on this evidence, the intent of the perpetrators cannot be questioned. Once the jurors placed the defendant at the scene of the crimes, petitioner's intent at the commission of the felonies was not in issue. Therefore, it is "beyond reasonable doubt that the [*Sandstrom*] error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828.

■ Petitioner's second ground for habeas relief is that the state failed to prove the essential elements of the crimes for which petitioner was convicted beyond a reasonable doubt. Petitioner contends that the state's evidence consisted solely upon the uncorroborated testimony of petitioner's co-conspirators. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. After reviewing the transcripts from petitioner's criminal trial, as discussed above in the summation of evidence from *Birt v. State, supra,* the Court concludes that "upon the record adduced at the trial [a] rational trier of fact could have found proof of guilt beyond a reasonable doubt." (footnote omitted). *Id.* 443 U.S. at 324, 99 S.Ct. at 2791.

Petitioner further contends that there was insufficient corroborating evidence to convict him of the felonies absent the testimony of witnesses Tapley, Leisher and Davis. Petitioner claims that without the evidence proffered from these three witnesses, particularly Davis, petitioner would not have been convicted. Absent the testimony of these three witnesses, the remainder of the evidence bearing on the alleged conspiracy was:

The Flemings were horribly murdered on the night of December 22. The lock on the smokehouse had been broken and fruit jars were found on the dirt floor. Their car was located about 2 miles away from their home. Gaddis had been seen at Mr. Fleming's car lot on the afternoon of December 22. Defendant Birt was seen on the road about 12 miles from Wrens at about 4 a.m. on December 23 in company with at least one other person. It is true, as defendant contends, that absent the testimony of Tapley, Leisher and particularly Davis, the evidence does not prove a conspiracy. However, certain portions of their testimony are admissible....

Code Ann. § 38–306 provides: "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." This Code section deals with the admissibility of declarations of one conspirator upon the trial of another conspirator. Contrary to defendant's contention, it does not render all testimony by a conspirator inadmissible until the fact of the conspiracy be proved by independent evidence. It does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator. "The testimony of a coconspirator as to facts within his knowledge involves no hearsay problem, since the statements

are given on the stand and are open to cross examination." Developments in the Law of Criminal Conspiracy, 72 Harv.L.Rev. 922, 984 (1959). *Birt v. State*, 236 Ga. at 821–22, 225 S.E.2d 248. Furthermore, admissions made by Gaddis to Davis were admissible at Gaddis' trial "as an admission of guilt just as a confession by [Gaddis] to a law enforcement officer would be admissible against [Gaddis]." *Id.* at 822, 225 S.E.2d 248.

In addition, petitioner claims that there was not sufficient evidence to corroborate the testimony of accomplice Davis so as to connect petitioner with the crimes. *Id.* at 824, 225 S.E.2d 248.

Code Ann. § 38–121 provides that the testimony of a single witness is generally sufficient to establish a fact, except that to convict in any case of felony where the only witness is an accomplice, corroborating circumstances are required. This Code section deals with the sufficiency of the evidence (testimony and corroboration) to convict in felony cases where an accomplice testifies as a witness....

"Simply because an accomplice's testimony is corroborated in most details, it does not follow that his testimony alone as to the identity and participation of the accused is sufficient to justify conviction." A host of cases can be found in support of this decision. See *Allen v. State*, 215 Ga. 455(2) (111 SE2d 70) (1959), and cases cited.

Thus, regarding sufficiency (as opposed to admissibility) the testimony of an accomplice must be corroborated by independent evidence as to the identity and participation of the accused which tends to connect the accused with the crime or leads to the inference that he is guilty. As stated in *Allen v. State*, supra, the corroborating facts and circumstances must do more than merely cast on the defendant a grave suspicion of guilt.

Davis' testimony as to the history of these crimes is amply corroborated by other evidence.

*Id.* at 824–25, 225 S.E.2d 248. While the Supreme Court of Georgia focused on the facts and evidence as they pertained to the *Birt* case, the court made it clear that the same reasoning and rationale applied to Gaddis' case. *Gaddis v. State*, 239 Ga. 238, 240, 236 S.E.2d 594 (1977). This Court agrees that there was sufficient evidence to corroborate the testimony of Tapley, Leisher and Davis, and for a rational trier of fact to have found proof of guilt beyond a reasonable doubt.

For the foregoing reasons, IT IS HEREBY ORDERED that petitioner's petition for a writ of habeas corpus is DENIED.