Debra Suzanne Murray HOWARD, Petitioner,

v.

Art GAVIN, Warden, Women's Correctional Institution, Respondent.

No. CV691–049.

United States District Court, S.D. Georgia, Statesboro Division.

Jan. 14, 1993.

Richard E. Allen, Charles Randall Sheppard, Augusta, GA, for petitioner.

Susan V. Boleyn, Paula Khristian Smith, Atlanta, GA, for respondent.

## ORDER

BOWEN, District Judge.

Petitioner, an inmate confined at Women's Correctional Institution in Hardwick, Georgia, filed a petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254, to vacate or set aside a conviction and sentence that she received in the Superior Court of Jenkins County, Georgia. Respondent filed a response in opposition. The Magistrate Judge recommended granting the petition, and Respondent filed an objection to the recommendation. For the reasons set forth below, the Court accepts the Magistrate Judge's recommendation and grants the petition.

## I. BACKGROUND

Petitioner was convicted of murder by a Jenkins County Superior Court jury and was sentenced to life imprisonment. Petitioner's motion for a new trial was denied. She then appealed her conviction to the Supreme Court of Georgia. Her sole enumeration of error on appeal was that the

trial court improperly admitted hearsay statements of the shooting victim, Linda McCorvey, through a medical doctor who examined the victim. Petitioner maintained, inter alia, that the admission of Ms. McCorvey's statements violated Petitioner's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

The Georgia Supreme Court affirmed Petitioner's conviction and sentence. In its published opinion, the court recounted the following pertinent facts:[1]

At the time of the shooting, Ms. Howard occupied the driver's seat of her parked automobile, while Gene Grim, the victim's boyfriend, occupied the passenger's side. The victim stood outside on the driver's side. Ms. Howard testified that the victim, who was large and jealous, approached the vehicle, reached through the partially open driver's side door window and began to pull her hair, pinning her against the window. Ms. Howard claimed that while still pinned she retrieved her pistol and fired a warning shot. When the victim continued pulling Ms. Howard's hair, she fired the second and fatal shot.

The only other surviving eyewitness, Mr. Grim, testified that he neither heard the victim threaten Ms. Howard, nor saw the victim pull Ms. Howard's hair. He went on to state that he did not see or feel the automobile shake from any bodily contact.

*Before the victim died, she told Dr. Charles F. Cowart, about the incident, relating that Ms. Howard threatened to shoot if the victim "took another step" toward the automobile. The victim went on to say, "I did, and she did." At trial the doctor's testimony about that conversation was allowed into evidence, over the objection of the defense counsel.*

Medical testimony indicated that the victim died as a result of a gunshot wound causing traumatic injury to several internal organs of her chest. State experts testified that the bullet recovered from the victim's body matched test bullets fired from Ms. Howard's pistol. The investigating police officers testified that no weapon, other than Ms. Howard's pistol, was recovered from the scene of the crime, and they found no signs of blood or hair and no indications of a struggle.

*Howard v. State,* 261 Ga. 251, 403 S.E.2d 204, 204–205 (1991) (emphasis added). The supreme court found—contrary to the trial court's ruling—that the victim's statements to Dr. Cowart regarding the circumstances of the shooting incident did not fall within a statutory exception for hearsay statements that are reasonably pertinent to medical diagnosis or treatment. *Id.* at 205 (citing O.C.G.A. § 24–3–4). Without explicitly addressing the Sixth Amendment right to confront witnesses, however, the court, finding "that a rational trier of fact could have found Ms. Howard guilty beyond a reasonable doubt," *id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), determined that admitting the victim's statements was harmless error. *Id.*

Petitioner subsequently filed her habeas corpus petition with this Court. The Sixth Amendment Confrontation Clause argument represents Petitioner's sole enumeration of error.

## II. ANALYSIS

### A. The Basis for Habeas Corpus Review

Title 28 U.S.C. § 2254 provides that

(a) ... a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State

---

**1.** For purposes of habeas corpus actions in federal court, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... shall be presumed to be correct...." 28 U.S.C. § 2254(d).

court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State....

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law· of the State to raise, by any procedure available, the question presented.

*Id.* § 2254(a)–(c).

■ 1. *A "wrong of constitutional dimension."* In habeas corpus proceedings, "[f]ederal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Petitioner argues that admitting the hearsay statements at trial violated the Confrontation Clause of the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. Petitioner contends that this constitutional violation was not "harmless error" in accordance with the test enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). (Pet'r's Br. Supp.Pet. Writ of Habeas Corpus at 13–14.) Because Petitioner has asserted that her Sixth Amendment right to confrontation was denied at her trial, the petition is an appropriate one for habeas corpus review.

■ 2. *Exhaustion of remedies.* The substance of a federal habeas corpus claim must first be presented to the state courts to satisfy the exhaustion-of-remedies requirement of 28 U.S.C. § 2254(b). *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). In the case sub judice, Respondent expressly states that he "does not contest exhaustion in this case," (Resp't's Answer–Resp. at 3), but then proceeds inexplicably to argue that the Georgia Supreme Court "never decided any fed-

eral question but decided the matter on purely state law grounds." (Resp't's Obj. Report & Recomm. Mag. Judge at 2.) Respondent thus implies that a state appellate court, by simply failing or refusing to address any federal questions which may have been raised by a state appellant and consequently resolving an appeal on "purely state law grounds," may foreclose the specific analysis of such federal questions by a federal court acting on a habeas corpus petition. "[W]hether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court...." *Smith v. Digmon,* 434 U.S. 332, 333, 98 S.Ct. 597, 599, 54 L.Ed.2d 582 (1978) (per curiam). Instead, the federal district court must determine whether the federal claim has "been fairly presented to the highest court of the State, either on direct review of the conviction or in a post-conviction attack." *Escobedo v. Estelle,* 650 F.2d 70, 72 (5th Cir.1981).[2]

■ Respondent argues that any Sixth Amendment violation was not specifically raised as error but was instead merely "thrown in" as additional argument in Petitioner's appellate brief to the Georgia Supreme Court. (Resp't's Obj. Report & Recomm. Mag. Judge at 2, 4–5.) While it is true that raising a hearsay claim alone "is not the automatic equivalent of raising a confrontation clause claim," *Hutchins v. Wainwright,* 715 F.2d 512, 519 (11th Cir. 1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984), and defense counsel has the responsibility of raising the constitutional error in "clear and forthright terms," it is not necessary to "present book and verse on the federal constitution." *Id.* The fundamental premise remains that "it is the *substance* of the claim that the court looks to in analyzing whether a federal claim has been voiced." *Id.* (emphasis added). When the substance of a petitioner's claim before the state court is that the

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted decisions of the former Fifth Circuit rendered prior to October 1, 1981, as precedent.

prosecution obtained an unfair advantage by introducing hearsay statements of a person who neither testified nor appeared at trial and relying upon those statements as evidence of the petitioner's guilt, the state court is alerted sufficiently to a Confrontation Clause issue. *Id.*

In this case, Ms. Howard objected to the hearsay evidence at trial, (Tr. at 105–106), and her enumeration of error on appeal to the Georgia Supreme Court asserted that "the trial court errored [sic] in permitting, over objection, the local doctor to testify that the deceased said she was intentionally shot under circumstances precluding justification and in further allowing the doctor to give his impression of the occurrence." Appellant's Enumeration of Error at 1, *Howard v. State,* 261 Ga. 251, 403 S.E.2d 204 (1991). Although Ms. Howard's appellate brief relied heavily upon other arguments, it expressly contended that admitting the hearsay statements "also violated Appellant's right of confrontation under the Sixth Amendment to the United States Constitution," and cited to *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a case wherein the Supreme Court held that admission at trial of certain hearsay statements made by the declarant to an examining physician violated the defendant's rights under the Confrontation Clause. Brief for Appellant at 16, *Howard v. State,* 261 Ga. 251, 403 S.E.2d 204 (1991). The substance of Petitioner's claim and its manner of presentation satisfied the exhaustion requirement of 28 U.S.C. § 2254(b).

**B. The Sixth Amendment Claim**

Petitioner argues that admitting the hearsay statements attributed to the decedent, which Petitioner believes contributed heavily to the jury's murder verdict, denied Petitioner her Sixth Amendment right to confront a material witness. She contends that the statements of Ms. McCorvey (the shooting victim) constituted perhaps the most damaging testimony against Petitioner, and that the impossibility of impeaching those statements prevented Petitioner from exercising a fundamental constitutional right. She further asserts that the appro-

priate standard of review for such a constitutional violation is that of "harmless error." Finally, she contends that the Sixth Amendment violation in this case was not harmless error under *Chapman, supra.* (Pet'r's Br.Supp.Pet.Writ of Habeas Corp. at 12–19.) In opposition, "Respondent submits that under the facts of this case, pretermitting the question of whether the state evidentiary ruling violated the Petitioner's Sixth Amendment rights under the confrontation clause, any ruling is harmless beyond a reasonable doubt." (Resp't's Br.Supp.Answer–Resp. at 18.)

1. *Did admitting the hearsay testimony violate the Sixth Amendment?* The Court must first determine whether the Petitioner was in fact subjected to a constitutional "error" at her murder trial. The Respondent declines to address the question of whether the admission of the decedent's hearsay statements deprived Petitioner of her constitutional right to confront a witness. This Court cannot exercise such an option; it must address the constitutional issue raised by Petitioner.

■ The constitutional right to confrontation does not exclude all hearsay evidence. *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970). "[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied." *White v. Illinois,* —— U.S. ——, ——, 112 S.Ct. 736, 738, 116 L.Ed.2d 848 (1992). Such satisfaction occurs because "a statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *Id.* "In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

■ The Georgia Supreme Court determined that Ms. McCorvey's statements to the doctor fell under no hearsay exception, and held that they were improperly admitted into evidence by the trial court. *How-*

*ard,* 403 S.E.2d at 205. Respondent does not attempt to refute this conclusion. Although "dying declarations" qualify as a firmly rooted hearsay exception, *see Mattox v. United States,* 146 U.S. 140, 151, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), Respondent does not contend that the hearsay statements in this case fall within the exception. Nor has Respondent demonstrated any "particularized guarantees of trustworthiness" that would permit admitting Ms. McCorvey's statements to the doctor. The record of the case does not reflect that such indicia were present. Accordingly, the admission of Ms. McCorvey's hearsay statements regarding the circumstances of the shooting violated Petitioner's constitutional right under the Confrontation Clause of the Sixth Amendment.

■ 2. *The appropriate standard of review.* In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court enunciated a stringent "harmless error" standard of review for violations of particular constitutional provisions. Under *Chapman,* once it is shown that the federal constitutional error occurred in state court, then "before [such error] can be held harmless, the [reviewing] court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828. The *Chapman* opinion made clear that the state's burden in such cases is quite heavy: " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Id.* at 23, 87 S.Ct. at 827 (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)). The "beneficiary of the constitutional error" (i.e., the State) must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828.

The "harmless error" standard enunciated in *Chapman* applies to review of Sixth Amendment Confrontation Clause violations, *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), including federal habeas corpus review of such violations that occurred in state court. *See Wasko v. Singletary,* 966 F.2d 1377, 1382–83 (11th Cir.1992). In *Van Arsdall,* the Supreme Court addressed a claim that a state trial court's denial of a defendant's opportunity to impeach a witness for bias violated the Confrontation Clause of the Sixth Amendment. Finding that the defendant had indeed shown a violation of the Confrontation Clause, *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1435, Chief Justice Rehnquist, writing for the Court, stated:

> [W]e hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, *like other Confrontation Clause errors,* is subject to *Chapman* harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. *These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.*

*Id.* at 684, 106 S.Ct. at 1438 (emphasis added). The *Van Arsdall* factors set forth *supra* have been applied by the Supreme Court and the Eleventh Circuit in subsequent *Chapman* "harmless error" analyses of Sixth Amendment Confrontation Clause claims. *See, e.g., Olden v. Kentucky,* 488 U.S. 227, 232–33, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988); *Wasko,* 966 F.2d at 1382–83; *United States v. Lankford,* 955 F.2d 1545, 1552 (11th Cir.1992); *United States v. Lang,* 904 F.2d 618, 625–26 (11th Cir.), *cert. denied,* 498 U.S. 924, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990).

Although the harmless error test enunciated by the Supreme Court in *Chapman*

(and as applied in its progeny, *Van Arsdall*) is the appropriate one for reviewing the Sixth Amendment Confrontation Clause error here, the Georgia Supreme Court did not apply it.[3] The court concluded that admitting the hearsay evidence was harmless error because it was " 'highly probable that the error did not contribute to the judgment.' " *Howard*, 403 S.E.2d at 205 (citation omitted). The analysis presented in support of that conclusion focused on sufficiency of the evidence. *See id.* (citing *Harris v. State*, 236 Ga. 766, 225 S.E.2d 263 (1976) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)[4]). In contrast, *Chapman* requires the State to prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," 386 U.S. at 24, 87 S.Ct. at 828, and *Van Arsdall* requires a court to consider several specific factors—more than just sufficiency of the evidence—when deciding whether the Confrontation Clause error was harmless beyond a reasonable doubt. Therefore, Ms. Howard's Sixth Amendment Confrontation Clause claim was not examined properly.

█ 3. *Whether the error was "harmless" under* Chapman. In accordance with *Chapman*, the Court must determine whether the Respondent, or the State, has proven "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. The verdict obtained in this case was that Petitioner

was guilty of murder. Although Petitioner admitted she shot Linda McCorvey, she claims she acted in self-defense and argues that the statements of the deceased "were the only putative first hand, direct evidence that was [elicited] in support of the state's contention that the Petitioner maliciously killed Ms. McCorvey." (Pet'r's Br.Supp. Pet. Writ of Habeas Corpus at 13.) In addition, she urged the trial court to instruct the jury on voluntary manslaughter, (Tr. at 195), and the court indeed charged the jury on that crime as well as murder. (Tr. at 252–56, 266–68, 288–90.) Therefore, the question to be resolved here under the *Chapman* "harmless error" test is whether Ms. McCorvey's statements to Dr. Cowart regarding the shooting incident contributed to the jury's *murder* verdict.

The Court must address Petitioner's allegation of error by applying the *Van Arsdall* factors. First, the record reflects that Ms. McCorvey's statements were indeed important to the State's case. That the State was well aware of the importance of Ms. McCorvey's statements is reflected in its pointed references to those statements during closing arguments. (Tr. at 207, 213, 221.) At that time, the hearsay statements were offered not as medical testimony but as conclusive evidence which diametrically opposed the Petitioner's version of the shooting incident.

The hearsay statements were not cumulative. Ms. McCorvey's statements that Petitioner threatened to shoot her if Ms.

---

**3.** Indeed, Respondent asserts that the state supreme court did not reach the federal question but rather treated the issue solely as a matter of state law and applied a test for harmless *non* constitutional error. (Resp't's Obj. Report & Recomm. Mag. Judge at 5.)

**4.** *Jackson* set forth the federal habeas corpus standard of review for a claim "that a person has been convicted in a state court upon insufficient evidence." *Jackson*, 443 U.S. at 309, 99 S.Ct. at 2783. In such a case, "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92.

Subsequent decisions have evidenced the distinction between the *Jackson* and *Chapman*

tests. In *Gaddis v. Kemp*, 638 F.Supp. 819, 823 (S.D.Ga.1986), this Court applied the tests to two separate enumerations of error by a habeas corpus petitioner. The Court applied the *Chapman* test to the petitioner's claim that the trial court had issued an erroneous jury charge which improperly shifted the burden of persuasion with regard to "intent" to the petitioner. *Id.* The Court then applied the *Jackson* test to the petitioner's claim that the state failed to prove the essential elements of crimes for which the petitioner was convicted. *Id. See also Cole v. Young*, 817 F.2d 412, 427 n. 10 (7th Cir.1987) (distinguishing between standard of review for evidentiary sufficiency under *Jackson* and more stringent standard for harmless error under *Chapman* ).

McCorvey took another step toward the automobile, that Ms. McCorvey took that fatal step, and that Petitioner fired in response, (Tr. at 107), represent the only eyewitness testimony explicitly contradicting Petitioner's version of the shooting.

As for evidence corroborating or contradicting the hearsay statements, Petitioner's testimony that she acted in self-defense only after a struggle ensued, (Tr. at 179–81), obviously contradicts the decedent's version. Gene Grim—who was sitting in the passenger seat of the car, and who claims that he did not see, hear, or otherwise sense the struggle alleged by the petitioner—was the only other surviving eyewitness to the events. Grim's testimony at trial neither corroborated nor contradicted the hearsay statements. Grim merely stated, "I just did not see it." (Tr. at 158.) Grim admitted that "it all happened so fast, I didn't see anything," (Tr. at 149), and that "I wasn't paying any attention." (Tr. at 151.) The record reflects that Grim had been drinking since he left work earlier in the day. (Tr. at 139–140.)[5]

Another *Van Arsdall* factor is the extent of cross-examination otherwise permitted. In the case sub judice, the State was able to present a version of the shooting which wholly contradicted Petitioner's testimony, and Ms. McCorvey's death foreclosed questioning that version. Had Ms. McCorvey survived the shooting and testified at an aggravated assault trial, Petitioner's counsel would have been able to subject Ms. McCorvey to a thorough and sifting cross-examination regarding the shooting incident itself, as well as the allegations that Ms. McCorvey—a 43 years old, 250 pound woman, (Tr. at 39–40, 119)—was prone to jealousy and violence. (Tr. at 153–56, 172, 178–81.)

The final *Van Arsdall* factor is the "overall strength" of the prosecution's case. Respondent asserts that "absent the [hearsay statements], there was otherwise ample evidence contradicting Petitioner's assertions of self-defense...." (Resp't's

Br.Supp.Answer–Resp. at 19.) As the Georgia Supreme Court opinion in *Howard* recounted:

> Although [Ms. Howard] took the stand in support of her claim of self-defense, the only other eyewitness, Gene Grim, stated that he did not see or hear the events recounted by Ms. Howard although he was seated next to her in her vehicle. The police investigators found no evidence of any other weapon aside from the pistol used by Ms. Howard to kill the victim. There were no signs of the struggle that Ms. Howard claims occurred; there were no signs of blood or residues of hair.

*Howard,* 403 S.E.2d at 205. This Court agrees that there is little evidence in the record which strongly supports the Petitioner's claim of self-defense. Very little evidence corroborated Petitioner's contention that Ms. McCorvey reached through the Petitioner's car window and attempted to pull her out by her hair.

Nevertheless, not all the evidence contradicted Petitioner's story. Some evidence supports Petitioner's assertions that Ms. McCorvey approached close enough to the Petitioner to threaten her physically. For instance, Ms. McCorvey's glasses were found on top of Petitioner's car—at the driver's side where Ms. Howard had been sitting—following the shooting. (Tr. at 157.) Even though Grim stated that he did not see the alleged hair-pulling attack, he did state that Ms. McCorvey was "at the driver's side" of the car. (Tr. at 148.) In its closing argument, the State noted that the shooting took place at a range of five to seven inches. (Tr. at 205). As for the absence of any other weapon at the scene, Petitioner did not claim that Ms. McCorvey had threatened her with a weapon. Furthermore, although there were no signs of a struggle, such as scuff marks in the dirt, Petitioner did not describe the hair-pulling incident as a flailing, protracted struggle which might have kicked up dirt and debris;

---

5. Grim had three beers and two drinks from a half-gallon of liquor before the shooting. (Tr. at 139, 147.) He was beginning to prepare another drink for himself when the incident occurred. (Tr. at 148.)

instead, she spoke of being "pinned ... upside of the car." (Tr. at 179.)

Thus, although the evidence offers little support for Petitioner's version of the incident, neither can it be said to overwhelmingly refute Petitioner's testimony. Furthermore, the sufficiency of the evidence used to convict the Petitioner is only one of several *Van Arsdall* factors to be considered under the *Chapman* harmless error test. Once Petitioner showed that her Sixth Amendment right to confrontation was violated, the burden shifted to Respondent to demonstrate beyond a reasonable doubt that the admission of the hearsay testimony did not contribute to the murder verdict obtained. Respondent has failed to carry this burden, and there remains a reasonable possibility that the evidence complained of might have contributed to the jury's decision to convict Ms. Howard of murder, as opposed to convicting her of voluntary manslaughter or acquitting her. Therefore, Respondent has failed to pass the *Chapman* harmless error test.

### III. CONCLUSION

Respondent has declined to address Petitioner's claim that she was deprived of her rights under the Confrontation Clause of the Sixth Amendment. The decedent's statements to the doctor fall under no exception to the rule against hearsay. Those statements offered a noncumulative, unimpeachable account of central details of the incident which could have resulted in the Petitioner's conviction for murder. It is reasonably possible that those statements contributed to the jury's murder verdict, especially since the State saw need to again refer to them during its closing arguments. Respondent has not proven beyond a reasonable doubt that the constitutional error alleged by the Petitioner failed to contribute to the verdict obtained.

Accordingly, the Petition for Writ of Habeas Corpus is hereby GRANTED. Petitioner is entitled to a NEW TRIAL. Respondent is ORDERED to RELEASE Petitioner from custody unless a retrial of Petitioner for the offense for which she is currently imprisoned shall have commenced within 120 days of date of this Order. It is FURTHER ORDERED that any such retrial of Petitioner be conducted without use of the hearsay statements made by the decedent, Linda McCorvey, to Dr. Charles F. Cowart regarding the circumstances of the shooting incident that led to Ms. McCorvey's death.

ORDER ENTERED.